DOROTHY BAILEY STUCKY, APPELLEE, v. GLENN ELMER STUCKY, APPELLANT.

185 N. W. 2d 656

Filed April 9, 1971. No. 37643.

Hal Bauer of Bauer, Galter & Nelson, for appellant.

Bert L. Overcash and Woods, Aitken & Aitken, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCown, J.

This is a divorce action brought by Dorothy Bailey Stucky against Glenn Elmer Stucky. Defendant filed special appearance challenging jurisdiction. The special appearance was overruled and default entered. The decree awarded plaintiff a divorce, custody of a minor child, and certain real and personal property. The decree also ordered the defendant to pay child support, alimony, and costs, including an attorney's fee. The defendant has appealed. The sole issue is whether the court had in personam jurisdiction of the defendant to support its order to pay support, alimony, costs, and fees.

Plaintiff and defendant were married in South Dakota in 1942. The defendant was a civil engineer. Since the completion of defendant's military service, he has been employed by the Soil Conservation Service of the United States Department of Agriculture. The parties lived in Sidney, Montana; Belleville, Illinios; Billings, Montana; and Lansing, Michigan; before moving to Lincoln, Nebraska, in 1961. In 1962, they purchased a home at 1726 South 51st Street in Lincoln. Title to the home was taken in joint tenancy between plaintiff and defendant. A mortgage requiring monthly payments was placed on the house. This became and was the home of plaintiff and defendant and their three children.

In February 1965, the defendant left Lincoln. Between then and December 30, 1969, the defendant had returned to Lincoln twice. On each occasion he was at the home for a very brief period of about an hour. After his initial departure in February 1965, the defendant each two weeks sent checks to the First National Bank of Lincoln for deposit in the joint bank account of plaintiff and defendant. In the calendar years 1965 through 1968, the total amounts varied from $7,883 to $8,880 per year. Beginning in 1969, the defendant decreased the amounts to $250 each two weeks. All credit accounts and all utility accounts at the home in Lincoln were in defendant's name, and were never discontinued nor

had names been changed. Mortgage payments on the house were joint.

By agreement between plaintiff and defendant, the plaintiff filed joint income tax returns for the family for each of the calendar years 1965 through 1968. The return for the calendar year 1968 shows that it was prepared by a Lincoln accountant and his signature as preparer was dated April 12, 1969. The federal income tax returns were signed by the defendant in blank and forwarded to the plaintiff along with his lists of deductions and his withholding statement. The home address shown on the joint income tax returns was 1726 South 51st Street, Lincoln, Nebraska. The employee's address shown on the defendant's withholding statement, Form W-2, prepared by the United States Department of Agriculture, attached to the return, showed defendant's address as 1726 South 51st Street, Lincoln, Nebraska.

In November 1968, the defendant filed a divorce complaint in Montana and alleged that he had been a resident of Montana for more than a year. That complaint was later dismissed. In the spring of 1969, the defendant filed an action for divorce in Pennsylvania.

The plaintiff's petition for divorce was filed in the district court for Lancaster County, Nebraska, on May 28, 1969. On that date plaintiff's attorney filed a praecipe for service of summons supported by an affidavit stating that the defendant was a nonresident of the State of Nebraska and was a resident of the State of Pennsylvania. The summons was served on the defendant personally in Pennsylvania on June 3, 1969.

The decree of the district court for Lancaster County, entered on January 21, 1970, specifically found that the court had jurisdiction "over the parties." The decree also found that the defendant should be awarded the hunting and fishing equipment and his personal belongings located in the residence in Lincoln, Nebraska.

The defendant contends that the district court for Lancaster County, Nebraska, did not have personal juris-

diction over the defendant and that a personal judgment for support, alimony, and costs based on constructive service outside the territorial limits of Nebraska was wholly ineffectual to sustain a judgment in personam.

Section 42-305, R. R. S. 1943, provides: "A petition for divorce, alimony and maintenance may be exhibited by a wife in her own name, as well as by a husband, and in all cases the defendant may answer such petition without oath. No person shall be entitled to a divorce unless the defendant shall have either (1) been served with process in person if within this state, (2) been served with personal notice duly proved and appearing of record if out of this state, (3) been served by publication under section 42-305.01, or (4) entered an appearance in the case."

Section 42-305.03, R. R. S. 1943, provides: "Personal notice as provided in subsection (2) of section 42-305 shall not be had without the plaintiff or his attorney filing an affidavit showing that the defendant is a nonresident of this state, or if a resident of this state that the defendant is absent therefrom, and that personal service cannot be had on the defendant in this state. Such notice shall be served upon the defendant in person by issuance and delivery of summons in the manner provided in section 25-521." Service here was in full conformity with section 25-521, R. R. S. 1943.

Proposed Official Draft, Restatement, Conflict of Laws 2d, § 27, p. 151, states the bases for the state's power to exercise judicial jurisdiction over an individual. Domicile and residence will each support jurisdiction. In Mounts v. Mounts, 181 Neb. 542, 149 N. W. 2d 435, we held that a state has judicial jurisdiction over an individual who is domiciled in the state and that a domicile once established continues until it is superseded by a new domicile. See, also, Proposed Official Draft, Restatement, Conflict of Laws 2d, § 19, p. 99. Comment (c) under that section states: "The burden of proof is

on the party who asserts that a change of domicil has taken place."

In layman's language, the primary meaning of "domicile" is "home." "It is commonly said that a person may have more than one residence, but only one domicile." Leflar, American Conflicts Law, § 16, p. 30. "Every person has a domicile at all times and, at least for the same purpose, no person has more than one domicil at a time." Proposed Official Draft, Restatement, Conflict of Laws 2d, § 11(2), p. 53.

The evidence in this case establishes that the defendant continuously and systematically maintained his family in a permanent home in Lincoln, Nebraska, and that that particular domicile was established in 1962. The defendant has failed to carry the burden of proof that a change of that domicile took place. Domicile in the state is alone sufficient to bring an absent defendant within reach of a state's jurisdiction for purposes of a personal judgment by means of appropriate substituted service. Milliken v. Meyer, 311 U. S. 457, 61 S. Ct. 339, 85 L. Ed. 278, 132 A. L. R. 1357 (1940). Personal service of summons is clearly adequate to meet the requirements of due process of law.

We have thus far dealt with the problem under traditional concepts. Older cases generally denied personal jurisdiction over a nondomiciliary of the forum state unless service of summons was made within the jurisdiction. Since International Shoe Co. v. State of Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A. L. R. 1057 (1945), the doctrine of minimum contacts has been adopted in many states. Nebraska's statutory version was adopted in 1967. See, §§ 25-535 to 25-541, R. S. Supp., 1969.

Section 25-536, R. S. Supp., 1969, provides in part: "(1) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's: (a) Transacting any business in this state; (b) Contracting to supply services

or things in this state; (c) Causing tortious injury by an act or omission in this state; (d) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; (e) Having an interest in, using, or possessing real property in this state; or (f) Contracting to insure any person, property, or risk located within this state at the time of contracting."

While that language does not cover divorce in specific words, it indicates clearly the legislative intention to apply the minimum contacts rule where it does not offend traditional concepts of fair play and substantial justice.

In addition, section 25-539, R. S. Supp., 1969, provides: "A court of this state may exercise jurisdiction on any other basis authorized by law."

The service provided for outside the state specifically includes personal delivery in the manner prescribed for service within this state or in the manner prescribed by the law of the place in which service is made for service in that jurisdiction. The entire act is cumulative and in addition to any other procedure for service of summons.

From the earliest days of this state, our unlimited equity jurisdiction and our divorce statutes by their own terms, gave us personal jurisdiction in cases such as this. That state-granted power was traditionally limited because of federal due process restrictions stemming from Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565 (1877). Following Milliken v. Meyer, *supra,* and International Shoe Co. v. State of Washington, *supra,* those restrictions were removed. It should be clear that both our divorce statutes previously referred to, as well as the statutes authorizing personal jurisdiction on minimum contacts principles, fully satisfy the requirements of procedural and substantive due process. "* * * it is reason-

able and fair to require a defendant whose voluntary acts have given rise to a cause of action in a state to litigate his responsibility for that conduct at the place where it occurred." Owens v. Superior Court, 52 Cal. 2d 822, 345 P. 2d 921, 78 A. L. R. 2d 388. See, also, Soule v. Soule, 193 Cal. App. 2d 443, 14 Cal. Rptr. 417; Mizner v. Mizner, 84 Nev. 268, 439 P. 2d 679.

It seems clear to us that the minimum contacts concept as a basis for in personam jurisdiction is peculiarly suited to marital support cases. We hold that in personam jurisdiction may be acquired over a nonresident defendant in a divorce action by extraterritorial personal service of process made in accordance with a statute of this state if there exist sufficient contacts between the defendant and this state relevant to the cause of action to satisfy traditional notions of fair play and substantial justice. In the case before us, those contacts are obviously sufficient. The last marital domicile was established in this state and the defendant continuously and systematically maintained his family here thereafter. His persistent and voluntary course of conduct, both in and outside this state had their effect in this state and gave rise to the plaintiff's cause of action for divorce. Under such circumstances, the defendant should be subject to the personal jurisdiction of this state.

The district court here found that it had jurisdiction of the parties, overruled the defendant's special appearance, and entered judgment accordingly. That judgment was correct and is affirmed.

AFFIRMED.

NEWTON, J., dissenting.

I respectfully dissent from the majority opinion in this case. That opinion presents a beautiful edifice built upon a completely false foundation. It is true that the terms "residence" and "domicile" are not always synonymous. It is also true that the authorization by a Legislature for the service of summons giving a court jurisdiction in personam if based upon either domicile or resi-

dence is sufficient to meet the requirements of the constitutional due process clause. Milliken v. Meyer, 311 U. S. 457, 61 S. Ct. 339, 85 L. Ed. 278, 132 A. L. R. 1357. It is also possible that the type of service of summons which the majority here seeks to authorize by judicial legislation *may be* desirable. That, however, is not for this court to determine. Nebraska has long authorized constructive service by publication and substituted service by personal service of summons outside the state, but all through the history of these statutes, over a period extending back a great many years, it has been recognized and, indeed, undisputed that such service could be used only in cases and for purposes usually denominated as in rem. Never before have the courts of this state sought to base a judgment in personam upon such service. See, Rhoades v. Rhoades, 78 Neb. 495, 111 N. W. 122; Gates v. Tebbetts, 83 Neb. 573, 119 N. W. 1120: Carpenter v. Carpenter, 104 Neb. 635, 178 N. W. 217. The first and third of these cases deal with questions growing out of divorce and alimony.

This same rule has been followed almost exclusively in all American jurisdictions. Since an action for divorce is universally considered to be an action in rem and an action for alimony or support money an action in personam, it is similarly, universally recognized that a divorce may be obtained on the basis of constructive or substituted service, but a judgment for alimony or support money cannot be so obtained. As indicated, the cases so holding are legion. Attention is called to the following: Vanderbilt v. Vanderbilt, 354 U. S. 416, 77 S. Ct. 1360, 1 L. Ed. 2d 1456; Estin v. Estin, 334 U. S. 541, 68 S. Ct. 1213, 92 L. Ed. 1561, 1 A. L. R. 2d 1412; Dorney v. Dorney, 145 F. Supp. 281 (1956); Wagner v. Wagner (D. C. Cir., 1961), 293 F. 2d 533; Rodriguez v. Ródriguez, 8 Ariz. App. 5, 442 P. 2d 169; Carnie v. Carnie, 252 S. C. 471, 167 S. E. 2d 297; Shonk v. Shonk, 45 Ohio Op. 2d 86, 16 Ohio Misc. 123, 241 N. E. 2d 178. See, also, 24 Am. Jur. 2d, Divorce and Separation, § 544, p. 665, and § 828, p.

939; 27A C. J. S., Divorce, § 94, p. 333, and § 78, p. 280.

Section 42-305, R. R. S. 1943, has been in effect in Nebraska in substantially the same form for a great many years. See § 1571, R. S. 1913. During all these years, this statute has been construed in accordance with the Nebraska cases first above cited and the cited cases from other jurisdictions. Now for the first time an attempt is made to pervert the clear meaning of the statute under the guise of interpretation. That statute authorizes the entry of a decree of divorce based upon either constructive or substituted service, but it *does not* authorize the entry of a personal judgment for alimony on the basis of such service. It states in part: "No person shall be entitled to a divorce unless the defendant shall have either (1) been served with process in person if within this state, (2) been served with personal notice duly proved and appearing of record if out of this state, (3) been served by publication * * *." Subsection (2) is the basis for the majority opinion. If subsection (2), providing for substituted service, can be so construed, then subsection (3), providing for constructive service, must also be construed as authorizing a judgment in personam for alimony. This would clearly be a violation of due process. The statute, as a whole, must be construed as a whole and it is positively barren of any distinction made between subsections (2) and (3) in regard to judgments in personam. Clearly, the Nebraska courts which, down through the years, have construed this statute as requiring personal service within the state as necessary to a judgment in personam are correct.

The majority opinion seeks to bulwark the result by adopting the "minimum contact" rule as a basis for approval of the service and judgment had in this case. The rule has not been heretofore applied in Nebraska. As pointed out above, the Nebraska statutes have been on the books, substantially unchanged, for at least half a century. They were adopted at a time when the federal

courts held it was a violation of the due process clause of the United States Constitution to enter a judgment in personam on substituted or personal service outside the state. Presumably the Legislature was aware of this situation and satisfied with the limited application of our statutes as they have not been changed, notwithstanding a reversal of the federal rule. In Nebraska it has been the uniform practice to deny in personam judgments where substituted service has been obtained on nonresidents.

As previously mentioned, Nebraska has followed the general rule. "Where there is no personal service upon defendant in a divorce case within the state and no appearance by him, the trial court is without jurisdiction to enter a personal decree against him for the payment of alimony, attorney's fees, or court costs." Allegrezza v. Allegrezza, 236 Minn. 464, 53 N. W. 2d 133. This rule has been followed in the great majority of jurisdictions. See, Pollock v. Pollock, 273 Wis. 233, 77 N. W. 2d 485; Carnie v. Carnie, 252 S. C. 471, 167 S. E. 2d 297; Curtis v. Curtis, 215 Ga. 367, 110 S. E. 2d 668; Stauffer v. Stauffer, 204 N. Y. S. 2d 217, 26 Misc. 2d 254; Cockrum v. Cockrum, 246 N. Y. S. 2d 376, 20 App. Div. 2d 642; Wagner v. Wagner (D. C. Cir., 1961), 293 F. 2d 533; Dorney v. Dorney, 145 F. Supp. 281 (1956); Accardi v. Accardi, 97 R. I. 336, 197 A. 2d 755; Emmons v. Emmons, 124 Vt. 107, 197 A. 2d 812; King v. Superior Court, 99 Cal. App. 2d 91, 221 P. 2d 120; Rodriguez v. Rodriguez, 8 Ariz. App. 5, 442 P. 2d 169.

There have been some recognized exceptions to the general rule. These cases involve instances wherein the defendant was not a bona fide nonresident. One such case is Mounts v. Mounts, 181 Neb. 542, 149 N. W. 2d 435. Others are: Gill v. Gill, 277 Minn. 166, 152 N. W. 2d 309; Dupuis v. Patin (La. App.), 155 So. 2d 768; Morelli v. Morelli, 226 N. Y. S. 2d 459; Lansdale v. Lansdale, 150 N. Y. S. 2d 42, 1 App. Div. 2d 374.

The wisdom of adopting the "minimum contact" rule

in certain types of cases is now becoming generally recognized, *but in no instance has any jurisdiction applied it generally in all types of cases*. This would be the result in Nebraska if the rule is adopted by judicial action in the present case. The interpretation given to section 42-305, R. R. S. 1943, is necessarily applicable also to section 25-521, R. R. S. 1943, which provides for substituted service: "In all cases where service may be made by publication, and in all other cases where the defendants are nonresidents, * * *." To thus widen the scope and generally extend the use of personal service outside the state on nonresidents in obtaining judgments in personam has not been contemplated either in Nebraska practice or by the Legislature.

The only states that have applied the "minimum contact" rule have done so by statute. These statutes are quite comprehensive and clearly specify in what types of cases and under what circumstances it is applicable. *In no instance has the rule been made available in all types of cases.* The states that have adopted the rule are California, Wisconsin, Kansas, and Illinois.

Wisconsin adhered to the general rule and prohibited judgments in personam under the minimum contact rule. See Pollock v. Pollock, 273 Wis. 233, 77 N. W. 2d 485. Since the 1959 passage of a statute *specifically* authorizing in personam judgments under certain circumstances in divorce cases, it too recognizes the rule in a limited manner.

The case of Mizner v. Mizner, 84 Nev. 268, 439 P. 2d 679, *does not* apply the rule in Nevada by judicial fiat. It simply gives full faith and credit to a California judgment entered in compliance with the California statute adopting the rule, and makes a pitch for approval of the rule without legislating it into Nevada law. In fact, the case specifically holds that one requirement is "a statute of the support ordering state has authorized the acquisition of such jurisdiction in that manner." (Sic personal service out of state.)

The California statute appears to have been adopted in 1957 and applies the rule only in cases where the defendant "was a resident of this State.* * * at the time of the commencement of the action, or * * * *at the time that the cause of action arose,* or * * * at the time of service." (Emphasis supplied.)

In *no instance* has any state adopted the minimum contact rule by judicial decision. The opinion cites section 25-536, R. S. Supp., 1969, which, in effect, adopts the "minimum contact rule" in certain cases. It obviously is *not* applicable to divorce cases. The logical conclusion is that they were purposely omitted and the effect of the majority opinion is to amend this statute by judicial legislation.

I conclude that the advisable course would be to leave this matter to the Legislature.

WHITE, C. J., and BOSLAUGH, J., join in this dissent.

SPENCER, J., concurring in the result.

I concur in the result herein. I restrict my concurrence to the fact that the defendant was personally served with process and the following language of the opinion: "The evidence in this case establishes that the defendant continuously and systematically maintained his family in a permanent home in Lincoln, Nebraska, and that that particular domicile was established in 1962. The defendant has failed to carry the burden of proof that a change of that domicile took place."