O. WILLIAM VON SEGGERN, SPECIAL ADMINISTRATOR OF THE ESTATE OF ELLA JEAN MUMMA, APPELLANT, V. SAM SAIKIN ET AL., APPELLEES.

189 N. W. 2d 512

Filed September 3, 1971. No. 37916.

J. William Gallup of Schrempp & Bruckner, for appellant.

Michael P. Cavel of Lathrop, Albracht & Dolan, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

In this wrongful death action defendant Sam Saikin, a resident of Illinois, appeared specially to object to the

jurisdiction of the court. The district court sustained the special appearance. Plaintiff, O. William Von Seggern, special administrator of the estate of Ella Jean Mumma, appeals. He asserts that two subsections of our "long-arm" statute provided bases for the district court to exercise personal jurisdiction over Sam.

No evidence was offered in district court. Sam Saikin assumed only for purposes of the hearing on his special appearance that the allegations of the petition were true.

The petition states: Von Seggern was acting under letters of administration issued out of the county court of Sarpy County, Nebraska. At different times Sam and Joel Saikin had pursued a course of conduct to separate Ella Jean from her husband, Samuel C., and to effect her death. They made interstate calls to her at Bellevue, Sarpy County. They subsequently traveled in interstate commerce to Sarpy County where they performed "acts . . . leading to the accomplishment of said unlawful and wrongful purpose." As a result, Ella Jean "was induced to travel" to Chicago, Illinois. There on November 5, 1967, the Saikins "willfully, wantonly, maliciously, intentionally and unlawfully" slew her. She died at age 18, intestate, and an inhabitant of Sarpy County. The special administrator commenced this action for the benefit of Samuel C. Mumma as next of kin. See, § 30-809, R. R. S. 1943; S.H.A. ch. 70, § 1 (Ill., 1959).

Von Seggern asserts bases for judicial jurisdiction under section 25-536 (1) (c) and (d), R. S. Supp., 1969, which tracks section 1.03 (a) (3) and (4), Uniform Interstate and International Procedure Act. See 9B U.L.A. 310 (1966). The section of the uniform act provides in part: "(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . (3) causing tortious injury by an act or omission in this state; (4) causing tortious injury in this state by an act or omission outside this state if he . . . engages in any . . . persistent course of conduct . . . in this state; . . . (b)

When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."

Mobility of population and other social and economic conditions called for expansion of judicial jurisdiction of a state over the person of a nonresident. See Hazard, "A General Theory of State-Court Jurisdiction," 1965 Supreme Court Review, at p. 246 (1965). Statutes and cases relating generally to the expansion have been reviewed. See, Kurland, "The Supreme Court, The Due Process Clause and the In Personam Jurisdiction of State Courts," 25 U. Chi. L. Rev. 569 (1958); Leflar, American Conflicts Law, §§ 42 to 44, pp. 79 to 90 (1968); "State-Court Jurisdiction," 73 Harv. L. Rev., at pp. 945 to 947 (1960); "The Virginia 'Long Arm' Statute," 51 Va. L. Rev. 719 (1965).

No one has constructed a table of "minimum contacts" that will always satisfy requirements of due process. The test is fundamental fairness. See, International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A. L. R. 1057; Stucky v. Stucky, 186 Neb. 636, 185 N. W. 2d 656 (1971) (opinion by McCown, J.); Leflar, American Conflicts Law, at pp. 71 and 78 (1968); Reese and Galston, "Doing an Act or Causing Consequences as Bases of Judicial Jurisdiction," 44 Iowa L. Rev. 249 (1959); ' The Virginia 'Long Arm' Statute," 51 Va. L. Rev. at 728 (1965).

The Commissioners' Note to section 1.03 of the uniform act reads: "Section 1.03 (a) (3) applies when the tortious act or omission occurs in the state even though the resulting injury occurs elsewhere. The state where the tortious act or omission occurs will often be the most appropriate location for the trial of the action. . . . Section 1.03 (a) (4) authorizes the exercise of jurisdiction when the tortious act or omission takes place without the state but the injury occurs within the state and there is some other reasonable connection between the state and the defendant. . . . A sufficient nexus exists

if . . . the defendant . . . in the state carries on some . . . continuous course of activity . . .. It is not necessary that this activity amount to the doing of business. . . . It should be noted that . . . the persistent course of conduct . . . need have no relationship to the act or failure to act that caused the injury. No distinctions are drawn between types of tort actions . . .. The concept of cause of action . . . should be broadly construed to cover an entire transaction so that, when possible, the entire dispute may be settled in a single litigation. Subdivision (b) is designed to prevent assertion of independent claims unrelated to any activity described in subdivision (a) of section 1.03." 9B U. L. A. pp. 311 to 313 (1966).

The phrase "tortious injury" does not necessarily have the same meaning for purposes of jurisdiction and ultimate liability. Cf. Nelson v. Miller, 11 Ill. 2d 378, 143 N. E. 2d 673 (1957) (Schaefer, J.).

The telephone calls and the acts of the Saikins were too remote to bring Von Seggern's cause of action within section 1.03 (a) (3) of the uniform act. Under subdivision (a) (4) Saikins' conduct established a connection with Nebraska, but the connection did not constitute a continuous course of activity. The connection was not reasonable in terms of a basis for jurisdiction over Sam Saikin.

The ruling sustaining the special appearance was correct.

AFFIRMED.