Alberta Jean DUNN, Appellant,

v.

John Frederick DUNN, Appellee.

No. 48125.

Court of Appeals of Oklahoma, Division No. 1.

Feb. 10, 1976.

Rehearing Denied April 6, 1976.

Certiorari Denied May 24, 1976.

Released for Publication by Order of Court of Appeals May 27, 1976.

Harold Hall and T. Walter Newmaster, Ada, for appellant.

Deaton, Gassaway & Davison, Inc., by Roger L. Benson, Ada, for appellee.

ROMANG, Judge:

This is a proceeding on a motion by the defendant husband to vacate that portion of the Decree of Divorce which grants the plaintiff wife a judgment against him for alimony, attorney fee and court costs.

The wife was granted a divorce on May 15, 1974 by the District Court of Pontotoc County, Oklahoma, and in the Decree she was awarded as her separate property, a 1970 Cadillac automobile, a mobile home, together with all of her personal belongings, furniture and effects in her possession. She was also granted an alimony judgment against the defendant husband in the amount of $20,000.00 "in lieu of further property settlement," and the husband was ordered to pay the wife's attorney fee in the amount of $500.00 and court costs. There were no children of this marriage, so there was no award with respect to child support.

The parties hereto had been legally married in Las Vegas, Nevada on October 1, 1966. Thereafter they had lived in the States of California and Arizona. When they separated in the latter part of February, 1973, they were living in Flagstaff, Arizona where they had been residing for approximately one year. Upon separation, the wife, together with her two children by a former marriage, moved to Pontotoc County, Oklahoma, where she arrived on or about March 4, 1973. Her petition for divorce was filed in the District Court of Pontotoc County, Oklahoma on September 24, 1973. Summons was served on the defendant personally in the State of Arizona where he had continued to reside after the separation. The validity of the service of summons is not in question.

After the service of summons upon the defendant in Arizona, there was considerable correspondence between the husband's attorney in Arizona with the wife's attorney in Oklahoma in an effort to work out a settlement agreement between the parties, but nothing was ever agreed upon. The husband did not plead nor answer in the divorce action, and the wife obtained the divorce by default.

Defendant alleged in his Motion that "the judgment, except as it pertains to the divorce granted the plaintiff, is void because it is in the nature of an in personam judgment and the Court did not have jurisdiction over the person of the Defendant to grant such judgment."

The trial court held an evidentiary hearing at which the wife testified as follows:

"Q . . . had your husband made any arrangements for the support and maintenance during the time you were in Oklahoma?

A IN March, '73, he—when I left Arizona, he said he would send me a hundred dollars a week, and he did that for approximately the first four or five weeks or so that I was here. He sent it to my uncles house out on route 1.

Q All right. Let me ask you this, Mrs. Dunn, how did you have occasion to leave the State of Oklahoma and come—or leave the State of Arizona and come to the State of Oklahoma, the first time?

A This is where I was born, and my relatives are here, except my parents and—

Q Why did you leave your husband to come here? You were still married to him, at that time, were you not?

A I was asked to leave.

Q Were you told where to go?

A No, he just told me wherever I wanted to go, he would support the children and I and he would send the mobile home.

Q Okay. You say he told you that he would send the mobile home wherever you wanted to go, is that correct?

A Correct.

\* \* \* \* \* \*

Q Would it be a fair statement, then, that your separation in Arizona was a final one and that you did not anticipate returning?

A Right.

Q Would you tell the Court what reason, if any, you had for not remaining there and getting a divorce before coming to Oklahoma?

A I was asked to get out of Arizona. Now, why, I don't know. I said I would stay there and he said, for your own good, he said I want you out of here as quick as possible.

Q Those were his exact words?

A Almost exactly, just get out as quick as you can."

The husband testified at the evidentiary hearing as follows:

"Q Okay. You consented, fully, to her moving to Oklahoma and living there?

A Yes.

Q In fact, you assisted her in locating in Oklahoma, is this correct?

A Yes, sir.

Q And after she was located, you assisted her in maintaining herself by periodic payments of money?

A Yes, sir."

After said evidentiary hearing the trial court entered an Order finding as follows:

" . . . that the Defendant's contacts with the State of Oklahoma are not, and were not on May 15, 1974, sufficient to give the Court jurisdiction to grant a personal judgment against Defendant, and, therefore, that portion of the judgment . . . which is a personal judg-ment . . . should be vacated and declared void."

The wife has appealed and here presents a single proposition, to-wit:

"That the court erred in sustaining defendant's Motion to Vacate, based upon lack of jurisdiction to enter an in personum judgment."

In *Hines v. Clendenning*, 465 P.2d 460 (Okl.1970), it was held that "minimum contacts" existed so that the District Court could exercise in personam jurisdiction. The opinion contains the following:

"While Sec. 187 listed only four 'bases of jurisdiction' the uniform act, as modified in Oklahoma, lists seven (Sec. 1701.-03(a)). The seventh basis of jurisdiction (not found in the uniform act) is as follows:

" 'maintaining any other relation to this state or to persons or property including support for minor children who are residents of this state which affords a basis for the exercise of personal jurisdiction by this state consistently with the Constitution of the United States.'

"Although this language presents some problem in statutory construction, it is clear from the concluding portion that it was the intention of our legislature to extend the jurisdiction of Oklahoma courts over nonresidents to the outer limits permitted by the due process requirements of the United States Constitution.

\* \* \* \* \* \*

"In *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, in discussing due process limitations in an action against a nonresident defendant, the United States Supreme Court said:

" '\* \* \* due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance

of the suit does not offend "traditional notions of fair play and substantial justice" '.

"In later cases the United States Supreme Court has further minimized the nature of the 'contacts' required by the above rule, and has placed more emphasis upon the 'fair play and substantial justice' aspect of it.

\*   \*   \*   \*   \*   \*

" . . . [T]he 'minimum contacts' required by the *International Shoe Co.* case exist in this case.

"We reach that conclusion upon the basis of the following contacts of the defendant husband with this state: (1) the marriage was contracted in Oklahoma; (2) the parties twice resided here under circumstances strongly indicating domicile; (3) defendant Hines attended college here, obtained a license to practice medicine here, registered to vote and did vote here; (4) he sent his wife back to Oklahoma, her home state and the home of her parents, and refused to permit her to return to him in California; (5) the wife, at her husband's direction, was effectively abandoned in Oklahoma and her right, if any, to alimony may be said to have accrued at least in part in Oklahoma.

\*   \*   \*   \*   \*   \*

"We simply hold that under all of the facts in this case, especially including items (4) and (5) in the third preceding paragraph, the 'minimum contacts' test is satisfied, . . . ."

In *Stucky v. Stucky*, 186 Neb. 636, 185 N.W.2d 656 (1971), the opinion of the majority of the Nebraska Supreme Court reads:

"It seems clear to us that the minimum contacts concept as a basis for in personam jurisdiction is peculiarly suited to marital support cases. We hold that in personam jurisdiction may be acquired over a nonresident defendant in a divorce action by extraterritorial personal service of process made in accordance with a statute of this state if there exists sufficient contacts between the defendant and this state relevant to the cause of action to satisfy traditional notions of fair play and substantial justice. In the case before us, those contacts are obviously sufficient. The last marital domicile was established in this state and the defendant continuously and systematically maintained his family here thereafter. His persistent and voluntary course of conduct, both in and outside this state had their effect in this state and gave rise to the plaintiff's cause of action for divorce. Under such circumstances, the defendant should be subject to the personal jurisdiction of this state."

The *Stucky* case is the subject of a law review article entitled "Personal Jurisdiction in Divorce Proceedings" by Douglas L. Curry, appearing in 51 Nebraska Law Review 159 et seq. At page 163, the author states:

"The in rem action of separating the marriage partners is distinguished from the in personam aspect of a divorce action. Traditionally, money decrees for alimony, child support and costs have been considered personal judgments against the defendant. Thus a state court might have jurisdiction, under the in rem theory, to grant the divorce, but not necessarily the authority to allow alimony and child support. In order to grant such relief, the court must first obtain jurisdiction over the defendant's person. 'The state courts have long recognized the rule that a court lacking personal jurisdiction over a husband cannot render a valid alimony judgment against him.' Thus unless personal jurisdiction can be obtained, alimony, child support and costs are beyond the state court's power to grant relief."

And at page 165 of the same article, the author speaks of the holding in the *Stucky* case as follows:

"This holding is truly unique. So far, four states have specifically adopted this

jurisdictional policy via statutory law, and California, through its very unique omnibus long-arm statute, has encompassed this holding. But to date Nebraska is one of only two states to arrive at this result by judicial decree without a specific statute, relying instead on a combination of completely separate statutes."

In the footnote to the last quoted sentence the author comments: "Oklahoma reached a similar conclusion relying exclusively on the long-arm statute, disregarding the domicile issue. *Hines v. Clendenning*, 465 P.2d 460 (Okl.1970)."

Since the *Hines* decision Oklahoma has enacted 12 O.S.Supp.1973, § 1272.2 which provides:

"A court may exercise personal jurisdiction over a person, whether or not a resident of this state, who lived within this state in a marital or parental relationship, or both, as to all obligations for alimony and child support where the other party to the marital relationship continues to reside in this state. When the person who is subject to the jurisdiction of the court has departed from the state, he may be served outside of the state by any method that is authorized by the statutes of this state."

Also Oklahoma has enacted 12 O.S.Supp. 1972, § 170.8 which reads:

"Service outside of the state in any of the cases mentioned in this act does not give the court in personam jurisdiction over a defendant who is not subject to the jurisdiction of the courts of this state or who has not, either in person or through an agent, submitted himself to the jurisdiction of the courts of this state."

In *Crescent Corporation v. Martin*, 443 P.2d 111 (Okl.1968), the court quoted with approval the following:

" ' * * * The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. * * *.' "

The evidence in the instant case shows conclusively that the defendant husband never lived in Oklahoma at any time in any relationship, nor did he transact any business in Oklahoma either personally or by an agent. Also, since defendant is not legally obligated to support his wife's minor children by a former marriage, subsection (7) of 12 O.S.1971, § 1701.03 is of no help.

This court has reviewed all of the testimony at both the divorce hearing and the evidentiary hearing and finds that the "minimum contacts" test is not satisfied, and we further find that defendant has not maintained any relationship that would confer jurisdiction upon the District Court of Pontotoc County, Oklahoma, to grant an in personam judgment against him in said divorce action. We therefore affirm the Order vacating the in personam money judgment against him. See *Doyle v. Doyle*, 17 Or.App. 529, 522 P.2d 906 (1974).

AFFIRMED.

REYNOLDS, P. J., concurs.

BOX, J., concurs in results.