H. Lee GENDLER, Trustee, Plaintiff,

v.

GENERAL GROWTH PROPERTIES, a
Real Estate Investment Trust,
Defendant.

Civ. No. 78-0-219.

United States District Court,
D. Nebraska.

Oct. 17, 1978.

John A. Garvey, Omaha, Neb., for plaintiff.

Harry L. Welch and Thomas A. Grennan, Omaha, Neb., David W. Belin and Philip E. Stoffregen, Des Moines, Iowa, for defendant.

## MEMORANDUM

DENNEY, District Judge.

This matter is before the Court upon the motion [Filings # 3 and # 4] of the defendant to dismiss subsequent to the submission of briefs and oral argument before the Court on September 22, 1978.

This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 (Cum. Supp.1978). Plaintiff, H. Lee Gendler, trustee, under a trust agreement dated March 15, 1966, is a resident and citizen of Omaha, Nebraska. Defendant, General Growth Properties, is a real estate investment trust organized, established and existing under the laws of the State of Massachusetts with its principal place of business in Des Moines, Iowa.

In March of 1974, the plaintiff entered into a lease agreement as lessor, with the defendant, as lessee, covering certain real estate located in Pottawattamie County, Iowa. Plaintiff alleges that he is entitled to substantial rights with respect to the use of the leased premises for banking purposes under the terms of the agreement. On the other hand, the defendant alleges that plaintiff has no rights under the lease to use the premises for such purposes. Plaintiff further alleges that he was notified by the defendant of its intention to sublease a

portion of the premises to a party other than the plaintiff for banking purposes. This, plaintiff contends, would constitute a breach of the lease agreement. Plaintiff prays that this Court adjudicate and declare the rights, duties and obligations of the parties with respect to Article XXX of the lease agreement. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1332(a) (1971).

### Long Arm Statute

Extraterritorial personal service of process is authorized by Neb.Rev.Stat. §§ 25–536, 537 (Reissue 1975). Section 25–536, the primary statutory grant of extraterritorial personal jurisdiction, provides as follows:

Jurisdiction over a person. (1) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

(a) Transacting any business in this state;

(b) Contracting to supply services or things in this state;

(c) Causing tortious injury by an act or omission in this state;

(d) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(e) Having an interest in, using, or possessing real property in this state; or

(f) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(2) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

The Court perceives as the main issue presented in defendant's motion to dismiss as whether the application of the Nebraska long-arm statute to the facts of this case offends due process.[1]

### Minimum Contacts Theory

In considering the Nebraska long-arm statute, the Court of Appeals for the Eighth Circuit has summarized the development of the applicable law as follows:

The Supreme Court of Nebraska has stated that the language of that state's long-arm statute "indicates clearly the legislative intention to apply the minimum contacts rule where it does not offend traditional concepts of fair play and substantial justice." *Stucky v. Stucky*, 186 Neb. 636, 185 N.W.2d 656, 659 (1971). That court has also said that "[n]o one has constructed a table of 'minimum contacts' that will always satisfy requirements of due process. The test is fundamental fairness." *Von Seggern v. Saikin*, 187 Neb. 315; 189 N.W.2d 512, 514 (1971). Based upon these decisions, the United States District Court for the District of Nebraska has concluded that the reach of the Nebraska long-arm statute is limited only by the constitutional constraints imposed by the minimum contacts rule. (Citations omitted).

In determining whether application of Nebraska's long-arm statute to the facts of the cases before us offends due process, it is necessary to ask whether the nonresident defendants have sufficient minimum contacts with the forum state so as to comply with traditional notions of fair play and substantial justice, *see International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); whether appellees have invoked the benefits and protections of Nebraska law by their activities there, *see Hanson*

---

1. The defendant requested that the Court dismiss the complaint for various reasons, specifically for lack of subject matter jurisdiction, lack of jurisdiction over the defendant, improper venue, insufficiency of process, insufficiency of service of process and failure to state a claim upon which relief can be granted. [*See* Filing # 4]. However, in light of the following opinion regarding lack of in personam jurisdiction, the Court finds it unnecessary to address these other issues.

*v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); and, because these cases involve contract disputes, whether the contracts have a substantial connection with the forum state.

*See McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

This Court has enunciated certain general factors to be considered in determining whether personal jurisdiction under long-arm statutes meets due process requirements:

(1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. (Citations omitted). These factors provide a general guide for applying the abstract concept of "fair play and substantial justice," rather than establishing a mathematical formula. *Caesar's World Inc. v. Spencer Foods, Inc.*, 498 F.2d at [1176], 1180 (8th Cir. 1974).

\*　　\*　　\*　　\*　　\*　　\*

While presence by the defendant in the forum state is not a jurisdictional prerequisite, *see McGee v. International Life Ins. Co., supra*, 355 U.S. at 222–23, 78 S.Ct. 199; *Electro-Craft Corp. v. Maxwell Electronics Corp.*, 417 F.2d [365], at 369 (8th Cir. 1969), it is necessary that the defendant have sufficient minimum contacts with the forum state so that requiring it to defend itself there will not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington, supra*, 326 U.S. at 316, 66 S.Ct. 154.

*Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 453–55 (8th Cir. 1977).

Applying these principles to the facts of this case, the Court is convinced that the defendant's contacts with the state of Nebraska are insufficient to satisfy due process.

*Discussion*

The plaintiff alleges several factual contacts in support of this Court's long-arm jurisdiction over the defendant.

1. The lease agreement between the parties was executed in Omaha, Nebraska;
2. The lease agreement provided for a continuing relationship between the parties for a period of 98 years;
3. Defendant's rental payments are to be made "c/o Gendler Land Investment Co., 1112 No. 13th, Omaha, Nebraska.";
4. The cause of action arose from the lease agreement itself.

Brief for Plaintiff at 8.

However, the plaintiff does not allege that defendant engaged in any business in Nebraska other than to transact the lease agreement at issue. Defendant is not a resident of Nebraska. Nor does the defendant have an office, agent or employee in this state. The defendant is situated solely in Iowa. "The fact that defendant was involved in a business transaction with a Nebraska resident is in itself insufficient to justify the assertion of jurisdiction over the defendant." *Peterson v. Crown Fin. Corp.*, 435 F.Supp. 901, 903 (D.Neb.1977). Moreover, the lease covers property located in Iowa, the defendant's signing trustee acknowledged the lease in Iowa, and, significantly, the lease agreement provides that the rights of the parties shall be governed by Iowa law, not Nebraska law [Filing # 1, Exhibit # 1 at 18].

As the Court noted earlier, the plaintiff contends that the fact that the parties entered into a continuing relationship for a period of 98 years and that the rental payments are to be made "c/o Gendler Land Investment Co." in Omaha are further examples of sufficient contacts which support the assertion of personal jurisdiction over the defendant. However, "[i]t is a defendant's contacts with the forum *state* that are of interest in determining if in personam jurisdiction exists, not its contacts with a resident." *Aaron Ferer &*

*Sons Co. v. Atlas Scrap Iron, supra,* 558 F.2d at 455 n. 6. *See also Aaron Ferer & Sons Co. v. American Compressed Steel Co.,* 564 F.2d 1206, 1211 (8th Cir. 1977).

█ Lastly, the plaintiff argues that the last two factors of the five mentioned earlier, i. e., the interest of the forum state and the convenience of the parties, are supportive of plaintiff's position. However, these last two factors are of secondary importance in the consideration. They are not determinative. *Toro Co. v. Ballas Liquidating Co.,* 572 F.2d 1267, 1270 (8th Cir. 1978); *Aaron Ferer & Sons Co. v. Atlas Scrap Iron, supra,* 558 F.2d at 455–56. "Where, as here, the 'primary factors' such as the nature, quality and quantity of the contacts as well as the relation of the cause of action to the contacts do not indicate sufficient minimum contacts, the 'secondary factors' alone cannot control." *Aaron Ferer & Sons Co. v. American Compressed Steel Co., supra,* 564 F.2d at 1210 n. 5.[2]

In sum, the Court finds that the defendant's contacts with the state of Nebraska are insufficient to comport with the requirements of due process.[3]

An order has been filed contemporaneously herewith in accordance with this memorandum opinion.

---

**2.** Plaintiff's reliance on *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) is misplaced. In *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.,* 418 F.Supp. 674, 679 (D.Neb.1976), this Court distinguished *McGee* "upon the interest of the state in protecting residents insured by out-of-state insurance companies."

*McGee* placed special emphasis on the interest of the state in providing a forum for its citizen injured by the actions of an out-of-state insurance company. As a result, due process was upheld on the basis of a single transaction. However, in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Supreme Court wrote:

This case is also different from *McGee* in that there the State had enacted special legislation to exercise what *McGee* called its "manifest interest" in providing effective redress for citizens who had been injured by nonresidents engaged in an activity that the State treats as exceptional and subjects to special regulation.

*Hanson v. Denckla, supra,* 357 U.S. at 252, 78 S.Ct. at 1239.

Seemingly, *McGee* should be limited in its application to those special cases where the state has an exceptional interest. *See* 6 Creighton L.Rev. 357, 368–70, 372–74 (1973).

**3.** The Court notes that since there is a similar case pending in the state court in Iowa, the dismissal of this complaint will not preclude plaintiff from litigating this matter further.