**Ardith A. GLOVER, Plaintiff,**

v.

**Donald J. WAGNER and St. Luke's Medical Center, Defendants.**

Civ. No. 78-0-374, 375.

United States District Court,
D. Nebraska.

Dec. 14, 1978.

Marshall A. Sullivan, Omaha, Neb., for plaintiff.

Ronald H. Stave, Omaha, Neb., for defendants.

## MEMORANDUM

DENNEY, District Judge.

This matter comes before the Court upon the defendants' motions to dismiss for lack of jurisdiction.

This is a wrongful death action brought by Ardith A. Glover, the decedent's wife, in her individual capacity, and as personal representative of the decedent's estate.

In October of 1976, Verlyn Glover, the decedent, consulted with certain physicians at the University of Nebraska Medical Center at Omaha, Nebraska, and was diagnosed as having Hodgkins' disease. A course of chemotherapy for the treatment of the decedent was outlined by the physicians.

Since Sioux City, Iowa, was physically more convenient to the decedent than was Omaha, Nebraska, the decedent consulted with the defendant, Donald Wagner, a physician licensed to practice medicine in the State of Iowa, for the purpose of having Dr. Wagner administer portions of the chemotherapy program outlined by the physicians at the University of Nebraska Medical Center.

Subsequently, plaintiff alleges that the decedent, while an outpatient at St. Luke's Medical Center, and being under the care of Dr. Wagner, was given an injection of a drug, vincristine sulfate. Plaintiff alleges that an employee of St. Luke's prepared the injection with the wrong dosage, injected it into the decedent, and as a result of the excessive dosage, the Hodgkins' disease advanced into a chronic progressive stage, forcing the decedent to undergo a long course of treatment and numerous hospitalizations until his death.

In response, the defendants point out that the plaintiff, in her various complaints, alleges as follows:

That the plaintiff is and was at all times mentioned herein a citizen and resident of the State of Nebraska; that the defendant, Donald J. Wagner, is and was at all times mentioned herein a citizen and resident of a state other than the State of Nebraska; that the defendant, St. Luke's Medical Center, is a corporation organized and existing under the laws of a state other than the State of Nebraska and has it [sic] principal place of business in a state other than the State of Nebraska; . . . . ..

Accordingly, the defendants have filed various motions to dismiss, contending that the Court lacks jurisdiction over the person of each of these defendants.

### Long-Arm Statute

The issue in this case, as the Court perceives it, is whether the application of the Nebraska long-arm statute to the facts of this case offends due process. Neb.Rev. Stat. § 25–536 (Reissue 1975), the primary statutory grant of extraterritorial personal jurisdiction, provides as follows:

Jurisdiction over a person. (1) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

(a) Transacting any business in this state;

(b) Contracting to supply services or things in this state;

(c) Causing tortious injury by an act or omission in this state;

(d) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

(e) Having an interest in, using, or possessing real property in this state; or

(f) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(2) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

*Minimum Contacts Theory*

In considering the Nebraska long-arm statute, this Court in *Hetrick v. American Honda Motor Co., Inc.*, 429 F.Supp. 116, 118 (D.Neb.1976), summarized the development of the applicable law as follows:

> When a plaintiff seeks to bring a defendant into court under a long-arm statute, he must state sufficient facts in the complaint to invoke jurisdiction. Once jurisdiction has been denied, plaintiff has the burden of proving such facts. *Block Industries v. DHJ Industries, Inc.*, 495 F.2d 256 (8th Cir. 1974); *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228 (5th Cir. 1973).
>
> Amenability to extra-territorial personal jurisdiction is a question of due process. A defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This Court has previously held that Nebraska's Long Arm Statute is as broad as the constitutional standard of due process. *Vergara v. Aeroflot "Soviet Airlines,"* 390 F.Supp. 1266 (D.Neb.1975). *See also Morton Buildings of Neb., Inc. v. Morton Buildings, Inc.*, 333 F.Supp. 187 (D.Neb. 1971); *Von Seggern v. Saikin*, 187 Neb. 315, 189 N.W.2d 512 (1971).
>
> In the Eighth Circuit, personal jurisdiction under long-arm statutes must meet due process requirements governed by the following guidelines: (1) the nature and quality of the contacts with the forum state; (2) the quanity of contacts with the forum state; (3) the relation of the cause of action to the forum state; (4) the interest of the forum state in providing a forum for its residents; (5) the convenience of the parties. *Electro-Craft Corp. v. Maxwell Electronics Corp.*, 417 F.2d 365, 368 (8th Cir. 1969).

*See also Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 453–55 (8th Cir. 1977); *Ag-Tronic, Inc. v. Frank Paviour, Ltd.*, 70 F.R.D. 393, 398–99 (D.Neb. 1976).

Applying these principles to the facts of this case, the Court is convinced that the defendants' contacts with the State of Nebraska are insufficient to satisfy due process.

*Discussion*

The plaintiff alleges several factual contacts in support of this Court's long-arm jurisdiction over the defendant.

1. The decedent was a resident of Nebraska.

2. The defendants knew that the decedent was a resident of Nebraska and would continue to reside there immediately following his medical treatments.

3. The results of the allegedly negligent treatment furnished to the decedent were manifested and endured within the State of Nebraska.

However, the facts also show that the activities of the defendants were extremely localized and confined to the State of Iowa. Neither of these defendants regularly transacts or solicits business in Nebraska or engages in any other persistent course of conduct in this state. Nor do the defendants derive substantial revenue from goods used or consumed or services rendered in Nebraska. It is not alleged that either of the defendants has an agent located in this state. Furthermore, the allegedly negligent actions took place in Iowa. There is no allegation that a tortious injury occurred in this state.

Apparently, the plaintiff would have this Court analogize this case to those cases where a *product* is manufactured in one state and put into the stream of commerce where it eventually ends up in another state and causes an injury to a resident of that forum. In those cases, personal jurisdiction over the defendant has been upheld, *see, e. g., Hetrick v. American Honda Motor Co., Inc., supra; Reilly v. Phil Tolkan Pontiac, Inc.*, 372 F.Supp. 1205 (D.N.J.1974), and with good reason. In the product cases, the manufacturer knows that the product, traveling through interstate commerce, will ul-

timately reach a consumer in any state of the United States. The manufacturer derives revenue from sales to the residents of the foreign forum. In sum, the manufacturer has performed "some act by which [he has] purposefully [availed himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Consequently, since he actively seeks and receives benefits from the other state, he must also abide by the laws of that state and be subjected to its jurisdiction when his product causes injury to an individual residing there. *See* 6 Creighton L.Rev. 357, 377–79 (1975).

However, there are significant facts in this case which distinguish it from the product cases described above. Most significantly, this case does not involve a product; it involves the rendering of personal services by a physician and a hospital. Neither defendant sought the benefits or protection of the laws of the State of Nebraska. As the Court has already noted, the activities of the defendants were localized and confined to the State of Iowa. "It is a defendant's contacts with the forum *state* that are of interest in determining ·if in personam jurisdiction exists, not its contacts with a resident." *Aaron Ferer & Sons Co. v. Atlas Scrap Iron, supra,* 558 F.2d at 455 n.6.

Moreover, the Court notes that the plaintiff has cited no cases which are factually similar to the case at bar. However, the Court, through its own research, has uncovered various cases which are quite similar to the instant case. *Wright v. Yackley,* 459 F.2d 287 (9th Cir. 1972); *Kurtz v. Draur,* 434 F.Supp. 958 (E.D.Pa.1977); *Soares v. Roberts,* 417 F.Supp. 304 (D.R.I.1976); *Gelineau v. New York Univ. Hosp.,* 375 F.Supp. 661 (D.N.J.1974).

In *Wright,* the plaintiff, a South Dakota resident, was taking drugs prescribed to her by a South Dakota physician. Plaintiff later moved to Idaho and, upon request, the South Dakota physician sent her copies of the original prescription. Plaintiff obtained the drugs in Idaho pursuant to the prescription. Thereafter, plaintiff filed suit in Idaho and served the physician under Idaho's long-arm statute, alleging that she was injured by the use of the drugs. The court found that it was constitutionally precluded from asserting personal jurisdiction over the defendant physician.

■ This Court is persuaded by the reasoning of the Court in *Wright* and finds the following observations equally applicable to this case.

In the case of personal services focus must be on the place where the services are rendered, since this is the place of the receiver's (here the patient's) need. The need is personal and the services rendered are in response to the dimensions of that personal need. They are directed to no place but to the needy person herself. It is in the very nature of such services that their consequences will be felt wherever the person may choose to go. However, the idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent ·with the public interest in having services of this sort generally available. Medical services in particular should not be proscribed by doctor's concerns as to where the patient may carry the consequences of his treatment and in what distant lands he may be called upon to defend it. The traveling public would be ill served were the treatment of local doctors confined to so much aspirin as would get the patient into the next state. The scope of medical treatment should be defined by the patient's needs, as diagnosed by the doctor, rather than by geography.

*Wright v. Yackley, supra,* 459 F.2d at 289–90.

Similarly, in *Gelineau,* a New Jersey plaintiff was treated in a New York hospital by New York physicians. When the plaintiff returned to his residence in New Jersey, he found tnat he was suffering from infectious· hepatitis. He brought suit in New Jersey and attempted to obtain jurisdiction over the New York hospital. In this

312

case, both the foreseeability argument and the analogy to the product cases were made; however, the Court noted that situations involving medical services are quite different from those involving manufactured goods and held that sufficient minimal contacts were not present:

> The case at bar does not involve a product which was deliberately or foreseeably shipped into the forum state's markets. It focuses on a service, not performed in the forum state but in a foreign state, rendered after the plaintiff voluntarily traveled to the foreign state so that he could benefit from that service which was available there only.

> When one seeks out services which are personal in nature, such as those rendered by attorneys, physicians, dentists, hospitals or accountants, and travels to the locality where he knows the services will actually be rendered, he must realize that the services are not directed to impact on any particular place, but are directed to the needy person himself. While it is true that the nature of such services is that if they are negligently done, their consequences will thereafter be felt wherever the client or patient may go, it would be fundamentally unfair to permit a suit in whatever distant jurisdiction the patient may carry the consequences of his treatment, or the client the consequences of the advice received.

> Unlike a case involving voluntary interstate or international economic activity, such as *Reilly v. Wolff,* [D.C., 374 F.Supp. 775] *supra,* which is directed at the forum state's markets, the residence of a recipient of personal services rendered elsewhere is irrelevant and totally incidental to the benefits provided by the defendant at his own location. It is clear that when a client or a patient travels to receive professional services without having been solicited (which is prohibited by most professional codes of ethics), then the client, who originally traveled to seek services apparently not available at home, ought to expect that he will have to travel again if he thereafter complains that the services sought by him in the foreign

jurisdiction were therein rendered improperly.

*Gelineau v. New York Univ.* Hosp., supra, 375 F.Supp. at 667.

■ Accordingly, to hold that such minimal contacts as occurred in this case were sufficient to provide a jurisdictional base would be to ignore the territorial limitations on the power of the respective states, *Hanson v. Denckla, supra,* 375 U.S. at 251, and would offend traditional concepts of fair play and substantial justice. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In light of the over-all context of defendants' Iowa activity, the mere foreseeability of the alleged effects occurring in Nebraska is insufficient.

An order shall issue contemporaneously with this Memorandum Opinion.