C. Hobart KEITH, Plaintiff,

v.

Louis K. FREIBERG and William M. Rensch, Defendants.

No. CV79–L–148.

United States District Court,
D. Nebraska.

Jan. 21, 1980.

C. Hobart Keith pro se.

Alan Peterson, Lincoln, Neb., for defendants.

## MEMORANDUM

URBOM, Chief Judge.

By an order dated September 14, 1979, the court gave the parties time to submit affidavits regarding each defendant's motion to dismiss. Each of the parties has submitted affidavits, and the plaintiff in addition has filed a motion requesting the court "to declare Rules 4(d)(7), 4(e) and 4(f) of the Federal Rules of Civil Procedure null and void, as applied to him in this case, and to enter an order validating personal jurisdiction over defendants," filing 12.

■ In support of his novel request that certain rules of procedure be invalidated for purposes of this case, the plaintiff argues that the rules in question deprive him of venue, which he claims is a substantive right under 28 U.S.C. § 1391(a). The plaintiff, however, confuses the concepts of jurisdiction and venue. A court's very power to decide a case is present only when it has proper jurisdiction. The procedural rules in question here address the proper scope of a federal trial court's jurisdiction. Once it is determined that a court has jurisdiction over the parties and the subject matter of a controversy, then considerations of venue or location become relevant. The rules of venue may be applied to designate which of the courts possessing jurisdiction may adjudicate the case. A court may have jurisdiction, but not proper venue over a matter. Considerations of venue only become relevant, however, when it has been determined that a court has the capacity to hear, or

jurisdiction over, a case. Jurisdictional rules do not, by their preliminary nature, deprive anyone of a "right" to proper venue. Consequently, the plaintiff's request that the court invalidate certain procedural rules must be denied.

■ The defendants Rensch and Freiberg state certain facts in their affidavits which the plaintiff has not contested in his affidavit. Both defendants, who are attorneys, state that their relationship with the plaintiff began when the plaintiff sought legal counsel. The plaintiff retained Freiberg, who in turn retained Rensch, for legal assistance on a personal injury claim arising out of an accident which had occurred on an Indian reservation in South Dakota. Both defendants maintained their offices in Rapid City, South Dakota, and they met several times at either of their offices concerning the plaintiff's claim up to the time that the case was ultimately resolved. No meetings were held with the plaintiff in the State of Nebraska concerning his claim. The defendants in their representation of the plaintiff initiated one contact with Nebraska: they presented a motion to the federal court in South Dakota requesting the appointment of a Nebraska county sheriff to serve process in the plaintiff's case in lieu of a federal marshal. The depositions in the plaintiff's personal injury action were all taken in Rapid City, South Dakota, and both defendants in that action appeared in Rapid City with their attorney. The personal injury lawsuit was commenced in the United States District Court for the District of South Dakota.

Both defendants in the present action state that no telephone calls were made between either of them and the plaintiff while the plaintiff was in the State of Nebraska. The plaintiff disputes this, stating in his affidavit that he telephoned the defendants from a telephone booth in Nebraska. The plaintiff also states that Freiberg had earlier conducted business in Nebraska and contends that this is evidenced by a check drawn on the First National Bank of Gordon, Nebraska, by the Ogalala Sioux Livestock and Landowner's Association, payable both to the plaintiff, Keith, and the defendant Freiberg. The defendant Freiberg, in a subsequent affidavit, filing 20, further explains the check: he states that he once represented the Ogalala Sioux Livestock and Landowner's Association and he had retained the plaintiff, who was a tribal attorney on the Pine Ridge Indian Reservation, to assist him in the matter.

Even assuming both that the plaintiff telephoned each defendant about his personal injury action from Nebraska and that the defendant Freiberg had previously represented a Nebraska association in an unrelated action and received payment through a Nebraska bank, the plaintiff has not established significant contacts between either of the defendants and the State of Nebraska in order to permit this court to assert personal jurisdiction over either of the defendants. For background discussion of this issue, I quote from my September 14, 1979, memorandum in this case:

"  .  .  .  In general, a federal court may serve process on and thereby obtain jurisdiction over only those persons who are physically present within the territorial boundaries of the state in which the federal court sits. See Rule 4(f) of the Federal Rules of Civil Procedure; 2 *Moore's Federal Practice*, ¶ 4.02[3], at 4–46 (2d ed. 1948). A federal court may, however, exercise jurisdiction over nonresidents to the same extent that a state court may. See Rule 4(d)(7) of the Federal Rules of Civil Procedure. As the defendants in this case may not be found within the territorial limits of this state, I must turn to Nebraska's long-arm statute and court decisions interpreting it to ascertain whether this court may assert personal jurisdiction over the defendants.

"Section 25–536, R.R.S. Neb. (Reissue 1975), governs jurisdiction over a person for certain acts performed within the State of Nebraska. An additional statute, § 25–539, provides that a Nebraska state court 'may exercise jurisdiction on any other basis authorized by law.' . . . [T]he Supreme Court of Nebraska has indicated that the minimum contacts rule

set out in *International Shoe Co. v. State of Washington*, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95] (1945), would be an appropriate standard for determining jurisdiction, e.g., *Stucky v. Stucky*, 186 Neb. 636, 185 N.W.2d 656 (1971) . . . ."

This court has previously concluded that "the Nebraska [long-arm] statute is limited only by the constitutional constraints imposed by the 'Minimum contacts rule' of *International Shoe Co. v. Washington*, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95] (1945)." *Vergara v. Aeroflot "Soviet Airlines"*, 390 F.Supp. 1266, 1270 (U.S.D.C. Neb.1970). There is no checklist of contacts with respect to sufficiency, and the basic test must be one of "fundamental fairness." *Von Seggern v. Saikin*, 187 Neb. 315, 317, 189 N.W.2d 512, 514 (1971); *Stucky v. Stucky*, 186 Neb. 636, 641, 185 N.W.2d 656, 659 (1971) (legislature intended "to apply the minimum contacts rule where it does not offend traditional concepts of fair play and substantial justice"). To cast light on the due process requirements of the minimum contacts rule, the Eighth Circuit Court of Appeals has set out the following factors for consideration in determining the existence of personal jurisdiction:

> "(1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 453 (C.A. 8th Cir.1977)

I know of no authority which would support a finding of personal jurisdiction over the defendants on facts such as those in this case. The quantity of contacts by the defendants with the State of Nebraska is few; the quality of those is weak; and the facts constituting the cause of action occurred in South Dakota. I cannot think of any significant interest which Nebraska would have in the resolution of the dispute. I have no reason to think that the federal court in Nebraska offers any convenience to the parties not afforded by the courts in South Dakota. For these reasons, personal jurisdiction may not be asserted over the defendants by means of Nebraska's long-arm statute.