558 F.2d 450
 AARON FERER & SONS CO., Debtor and Debtor in Possession, Appellant,
v.
ATLAS SCRAP IRON & METAL COMPANY, Appellee.
AARON FERER & SONS CO., Debtor and Debtor in Possession, Appellant,
v.
BECKER METALS CORP., Appellee.
AARON FERER & SONS CO., Debtor and Debtor in Possession, Appellant,
v.
WIMCO METALS, INC., Appellee.
AARON FERER & SONS COMPANY, Debtor and Debtor in Possession, Appellant,
v.
SITKIN SMELTING & REFINING COMPANY, Appellee.
 Nos. 76-1794 76-1796 and 76-1832.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 17, 1977.
Decided June 30, 1977.
 
 Robert J. Murray, Omaha, Neb., for appellants; Raymond R. Simon and Stephen G. Olson, Venteicher & Strasheim, Omaha, Neb., on briefs.
 Frank Susman, Clayton, Mo., for appellees Atlas Scrap and Becker Metals; Barbara L. Beran and J. Leonard Schermer, St. Louis, Mo., and Irving B. Epstein, Omaha, Neb., on briefs.
 Eugene L. Pieper, Omaha, Neb., for appellee Wimco Metals.
 Thomas F. Flaherty, Omaha, Neb., for appellee Sitkin Smelting.
 Before GIBSON, Chief Judge, WEBSTER and HENLEY, Circuit Judges.
 WEBSTER, Circuit Judge.
 
 
 1
 In these consolidated appeals, appellant Aaron Ferer & Sons Company seeks reversal of four orders of the District Court[1] dismissing appellant's complaints against the appellee corporations for lack of in personam jurisdiction.[2] We affirm.
 
 
 2
 In 1974, appellant filed a petition for arrangement under Chapter XI of the Bankruptcy Act. Two years later, it filed separate complaints against appellees in the United States District Court for the District of Nebraska alleging it had made voidable preferential transfers.[3]
 
 
 3
 Each appellee then filed a motion to dismiss, challenging the court's in personam jurisdiction, which appellant had asserted under Nebraska law.[4] In support of their motions, appellees submitted affidavits in which they averred that they had never conducted business in Nebraska. In its resistance to the motions to dismiss, appellant contended that the contracts in dispute were part of a continuous course of doing business in the State of Nebraska and that in view of the nature and quality of appellees' "contacts" with that state, the District Court had jurisdiction. It listed the following as appellees' "contacts" with Nebraska: numerous letters and telephone calls between appellant's office in Omaha, Nebraska, and appellees' offices in various other states; payments prepared by appellant in Omaha and drawn on appellant's account at an Omaha bank; contracts prepared by appellant in Omaha, mailed to appellees in states outside Nebraska, acknowledged by appellees, and mailed back to appellant in Omaha; and sales orders prepared by appellees Wimco Metals, Inc. and Sitkin Smelting & Refining Company at their offices outside Nebraska, mailed to appellant in Omaha, acknowledged by appellant, and returned by mail to appellees.
 
 
 4
 The District Court consolidated the cases and heard oral argument. It granted the motions to dismiss, finding that the purchase contracts in dispute were executed outside of Nebraska and were not performed in whole or in part in Nebraska.[5] It held,
 
 
 5
 (W)here the contract is executed outside the forum by a non-resident seller who does not transact or solicit business in the forum, and where the goods are destined for shipment to states other than the forum state, the fact that plaintiff is a Nebraska resident is insufficient to satisfy traditional notions of fair play and substantial justice. The use of arteries of interstate mail, telephone, railway and banking facilities is insufficient, standing alone, to satisfy due process.
 
 
 6
 Ferer appeals, contending that maintenance of these suits in a Nebraska forum would not violate due process. We disagree.
 
 
 7
 The Supreme Court of Nebraska has stated that the language of that state's long-arm statute "indicates clearly the legislative intention to apply the minimum contacts rule where it does not offend traditional concepts of fair play and substantial justice." Stucky v. Stucky, 186 Neb. 636, 185 N.W.2d 656, 659 (1971). That court has also said that "(n)o one has constructed a table of 'minimum contacts' that will always satisfy requirements of due process. The test is fundamental fairness." Von Seggern v. Saikin,187 Neb. 315, 189 N.W.2d 512, 514 (1971). Based upon these decisions, the United States District Court for the District of Nebraska has concluded that the reach of the Nebraska long-arm statute is limited only by the constitutional constraints imposed by the minimum contacts rule. See Vergara v. Aeroflot "Soviet Airlines," 390 F.Supp. 1266, 1270 (D.Neb.1975). See also Ag-Tronic, Inc. v. Frank Paviour Ltd., 70 F.R.D. 393, 398 (D.Neb.1976); Morton Buildings of Nebraska, Inc. v. Morton Buildings, Inc., 333 F.Supp. 187, 192 (D.Neb.1971); General Leisure Products Corp. v. Gleason Corp., 331 F.Supp. 278, 279 (D.Neb.1971); Blum v. Kawaguchi, Ltd., 331 F.Supp. 216, 219-20 (D.Neb.1971).
 
 
 8
 In determining whether application of Nebraska's long-arm statute to the facts of the cases before us offends due process, it is necessary to ask whether the nonresident defendants have sufficient minimum contacts with the forum state so as to comply with traditional notions of fair play and substantial justice, see International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); whether appellees have invoked the benefits and protections of Nebraska law by their activities there, see Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); and, because these cases involve contract disputes, whether the contracts have a substantial connection with the forum state. See McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).
 
 
 9
 This Court has enunciated certain general factors to be considered in determining whether personal jurisdiction under long-arm statutes meets due process requirements:
 
 
 10
 (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.
 
 
 11
 Caesar's World, Inc. v. Spencer Foods, Inc., 498 F.2d 1176, 1180 (8th Cir. 1974). See Block Industries v. DHJ Industries, Inc., 495 F.2d 256, 259 (8th Cir. 1974); Gardner Engineering Corp. v. Page Engineering Co., 484 F.2d 27, 31 (8th Cir. 1973); Thompson v. Ecological Science Corp., 421 F.2d 467, 469 (8th Cir. 1970); Electro-Craft Corp. v. Maxwell Electronics Corp., 417 F.2d 365, 368 (8th Cir. 1969). These factors provide a general guide for applying the abstract concept of "fair play and substantial justice," rather than establishing a mathematical formula. Caesar's World, Inc. v. Spencer Foods, Inc., supra, 498 F.2d at 1180.
 
 
 12
 Applying these principles to the facts of each of the appeals involved herein viewed in the light most favorable to appellant, we find that appellees' contacts with the State of Nebraska are insufficient to satisfy due process.
 
 
 13
 (1) Appellee Atlas Scrap Iron & Metal Company. Atlas is a Texas corporation with its principal place of business in Dallas, Texas. Appellant's affidavit states that Ferer and Atlas had engaged in a continuous course of business for approximately two years prior to April 24, 1974, the day appellant filed its petition for Chapter XI arrangement, involving transactions totaling in excess of $500,000. The purchase contracts involved in the present action were executed by Atlas in Texas and concerned metal sold by appellant in Texas for delivery outside of Nebraska.
 
 
 14
 (2) Appellee Becker Metals Corporation. All of the purchase contracts at issue between Ferer and Becker, a Missouri corporation with its principal place of business in St. Louis, Missouri, were executed in Missouri and concerned metal sold by Becker in Missouri for delivery to destinations outside of Nebraska. Appellant and Becker had engaged in a continuous course of business for five years, with transactions totaling approximately $500,000.
 
 
 15
 (3) Appellee Wimco Metals, Inc. Prior to the filing of its Chapter XI petition, appellant and Wimco, a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania, had engaged in a continuous course of business dealings for a period of over one year totaling in excess of $500,000. The purchase contracts at issue were executed in Pennsylvania and concerned metal sold by Wimco in Pennsylvania for delivery outside of Nebraska.
 
 
 16
 (4) Appellee Sitkin Smelting & Refining Company. Sitkin, a Pennsylvania corporation with its principal place of business in Lewiston, Pennsylvania, had engaged in a continuous course of business dealings with appellant for at least two years prior to the day appellant filed its Chapter XI petition, with transactions exceeding a value of $700,000. All of the purchase contracts that are the subject of appellant's complaint against Sitkin were executed in Pennsylvania and concerned metal sold by Sitkin in Pennsylvania for delivery to destinations outside of Nebraska. In July, 1974, Sitkin brought a lawsuit in the United States District Court for the District of Nebraska against the United States National Bank of Omaha to resolve a dispute between Sitkin and the bank concerning the bank's refusal to honor negotiable instruments drawn by appellant and payable to Sitkin.
 
 
 17
 Certain facts are common to all of the actions involved herein. None of the appellee corporations has an office, agent or employee in the State of Nebraska, nor has any representative of an appellee corporation ever entered Nebraska for a purpose related to the contracts at issue here. The metal goods involved in these purchase contracts neither originated in nor were destined for Nebraska. There were, however, numerous telephone calls and mailings between appellant in Nebraska and appellees in other states.
 
 
 18
 While presence by the defendant in the forum state is not a jurisdictional prerequisite, see McGee v. International Life Ins. Co.,supra, 355 U.S. at 222-23, 78 S.Ct. 199; Electro-Craft Corp. v. Maxwell Electronics Corp., supra, 417 F.2d at 369, it is necessary that the defendant have sufficient minimum contacts with the forum state so that requiring it to defend itself there will not offend traditional notions of fair play and substantial justice. See International Shoe Co. v. Washington,supra, 326 U.S. at 316, 66 S.Ct. 154. Appellees have no such contacts. The contracts at issue here were not to be performed in any part in Nebraska, cf. Caesar's World, Inc. v. Spencer Foods, Inc., supra, 498 F.2d at 1180-81; Gardner Engineering Corp. v. Page Engineering Co., supra, 484 F.2d at 32; Electro-Craft Corp. v. Maxwell Electronics Corp., supra, 417 F.2d at 367; the goods involved in the contracts did not originate in nor were they destined for Nebraska, cf. Gardner Engineering Corp. v. Page Engineering Co., supra, 484 F.2d at 32; Electro-Craft Corp. v. Maxwell Electronics Corp., supra, 417 F.2d at 369; Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 383 (6th Cir. 1968); Aftanase v. Economy Baler Co.,343 F.2d 187, 197 (8th Cir. 1965); the contracts were not negotiated in Nebraska, cf. Thompson v. Ecological Science Corp., supra, 421 F.2d at 469; they were not executed there, cf. O'Hare International Bank v. Hampton, 437 F.2d 1173, 1175 (7th Cir. 1971); and appellees employed no salesmen or agents in Nebraska, cf. International Shoe Co. v. Washington, supra, 326 U.S. at 313, 66 S.Ct. 154.
 
 
 19
 While no one of these factors is alone determinative, there is lacking in these cases any contact between an appellee corporation and the State of Nebraska sufficient to satisfy due process.[6] The letters and telephone calls in this purely commercial setting did not supply the necessary minimal contact. See Benjamin v. Western Boat Building Corp., 472 F.2d 723, 729-30 (5th Cir.), cert. denied, 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973); Hamilton Brothers, Inc. v. Peterson, 445 F.2d 1334, 1336 (5th Cir. 1971); Smith v. Piper Aircraft Corp., 425 F.2d 823, 825 (5th Cir. 1970); Scheidt v. Young, 389 F.2d 58, 60 (3d Cir. 1968); Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 587 (2d Cir. 1965). See also Arthur, Ross & Peters v. Housing, Inc., 508 F.2d 562, 564-65 (5th Cir. 1975); American Steel, Inc. v. Cascade Steel Rolling Mills, Inc., 425 F.Supp. 301, 303 (S.D.Tex.1975), aff'd, 548 F.2d 620 (5th Cir. 1977).[7] Assertion of jurisdiction by Nebraska would, under these circumstances, violate traditional notions of fair play and substantial justice. See International Shoe Co. v. Washington, supra, 326 U.S. at 316, 66 S.Ct. 154. Appellees have not invoked the benefits and protections of Nebraska law by reason of any activities in that state connected with the contracts at issue.[8] See Hanson v. Denckla, supra, 357 U.S. at 253, 78 S.Ct. 1228. And the contracts involved herein have no "substantial connection" with the forum state. See McGee v. International Life Ins. Co., supra, 355 U.S. at 223, 78 S.Ct. 199. That Nebraska may have an interest in providing a forum for disputes over contracts entered into by its residents, cf. Thompson v. Ecological Science Corp., supra, 421 F.2d at 470, or that it may be more convenient for appellant to litigate these cases in Nebraska, is not determinative.[9] Those are only two elements to be considered,[10] and the absence of minimum contacts between appellees and Nebraska precludes the assertion of jurisdiction by that state.[11]
 
 
 20
 The orders of dismissal are affirmed.
 
 
 
 [1]
 The Honorable Robert V. Denney, United States District Court for the District of Nebraska
 
 
 [2]
 In its memorandum, the District Court dealt with six complaints filed by Ferer, the four presently pending in these appeals, a complaint against American Compressed Steel Company, and one against Copalco International Company. Because American had purchased metals from appellant, Judge Denney concluded there was a possibility personal jurisdiction over that company might exist. He gave appellant an additional fifteen days in which to develop facts relating to its transactions with American. That case is not involved in this appeal. Ferer's appeal from the dismissal of its complaint against Copalco, originally consolidated with the pending appeals, was dismissed on stipulation of the parties subsequent to oral argument
 
 
 [3]
 Appellant alleged in its complaints that it purchased certain metal goods from each appellee for resale to third parties and that after each appellee had shipped its goods, it either wrongfully stopped or diverted the goods while in transit, wrongfully reclaimed them after the transit had been completed, or wrongfully collected the proceeds from a subsequent purchaser without remitting the proceeds to appellant. Appellant alleged these events occurred within four months before it filed its petition for arrangement and while it was insolvent, and thus constituted transfers by appellant to or for the benefit of appellees, unsecured creditors of appellant, for or on account of antecedent debts. Appellant claimed these transfers operated as preferences under section 60 of the Bankruptcy Act, 11 U.S.C. § 96. It sought to have appellees' transfers of the goods declared null and void. It also sought return of the goods or, if the goods had been converted, judgment against appellees for the value of the goods at the time of transfer
 
 
 [4]
 Neb.Rev.Stat. § 25-536 (1975 Reissue) provides:
 Jurisdiction over a person. (1) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:
 (a) Transacting any business in this state;
 (b) Contracting to supply services or things in this state;
 (c) Causing tortious injury by an act or omission in this state;
 (d) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;
 (e) Having an interest in, using, or possessing real property in this state; or
 (f) Contracting to insure any person, property, or risk located within this state at the time of contracting.
 (2) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.
 
 
 [5]
 Judge Denney's opinion is published at 418 F.Supp. 674 (D.Neb.1976)
 
 
 [6]
 Appellant's previous business dealings with each appellee cannot be used as a basis for establishing jurisdiction. It is a defendant's contacts with the forum state that are of interest in determining if in personam jurisdiction exists, not its contacts with a resident. See Hanson v. Denckla, supra, 357 U.S. at 250-55, 78 S.Ct. 1228
 
 
 [7]
 The recent decision in Norton v. Local Loan, 251 N.W.2d 520 (Iowa 1977), to which appellant directed our attention subsequent to oral argument, is readily distinguishable. There, in the context of a tort suit, the Iowa Supreme Court held that a telephone call from the defendant's agent in Nebraska to the plaintiff in Iowa constituted "conduct in (the) state" sufficient for Iowa to exercise personal jurisdiction over the defendant. Not only did the cause of action and the damages alleged arise directly from the telephone call, but tort cases involve interests of the state not present in contract cases. See Fulghum Industries, Inc. v. Walterboro Forest Products, Inc., 477 F.2d 910, 912 (5th Cir. 1973). Nebraska's long-arm statute also provides for jurisdictional differences between tort and contract actions. See Neb.Rev.Stat. § 25-536, supra note 4
 
 
 [8]
 That Sitkin Smelting & Refining Company instituted a lawsuit in Nebraska against appellant's bank is not determinative of the question whether Sitkin had sufficient minimum contacts with Nebraska such that it could be required to defend itself there. See Dragor Shipping Corp. v. Union Tank Car Co., 361 F.2d 43, 49 & n.12 (9th Cir.), cert. denied, 385 U.S. 831, 87 S.Ct. 68, 17 L.Ed.2d 66 (1966)
 
 
 [9]
 Implicit in the application of any long-arm statute are considerations of convenience, fairness and the avoidance of harassment, see Block Industries v. DHJ Industries, Inc., supra, 495 F.2d 260; and the convenience to appellees is also a consideration. But however minimal the burden of defending in a foreign tribunal may be, "a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." Hanson v. Denckla, supra, 357 U.S. at 251, 78 S.Ct. at 1238
 
 
 [10]
 This Court has said that the interest of the forum state and the convenience of the parties are "secondary factors," and that the quantity of the contacts with the forum state, the nature and quality of the contacts, and the relation of the cause of action to the contacts are the "primary" factors to be considered. Thompson v. Ecological Science Corp., supra, 421 F.2d at 469; see Gardner Engineering Corp. v. Page Engineering Co., supra, 484 F.2d at 31
 
 
 [11]
 Because Judge Denney confined his analysis to the due process question, it is to that issue that we have directed our resolution of these appeals. We note, however, that the Nebraska Supreme Court has held that activities of a defendant in preparing and executing a contract in Nebraska do not constitute "transacting any business" in the state within the meaning of the Nebraska long-arm statute. Conner v. Southern, 186 Neb. 164, 181 N.W.2d 446, 447 (1970)