**AARON FERER & SONS CO., Debtor and Debtor in Possession, Appellant,**

v.

**AMERICAN COMPRESSED STEEL CO., Appellee.**

**AARON FERER & SONS CO., Debtor and Debtor in Possession, Appellant,**

v.

**PHILLIPS STEEL & METALS COMPANY, INC., Appellee.**

**Nos. 76–2104 and 76–2105.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 1, 1977.

Decided Nov. 9, 1977.

Robert J. Murray (argued), Raymond R. Simon and Stephen G. Olson, Omaha, Neb., filed appendix and briefs, for appellant, Aaron Ferer & Sons Co.

Thomas F. Flaherty, Omaha, Neb., argued, and filed brief, for appellee, American Compressed Steel Co.

William A. Tinstman, Omaha, Neb., argued and filed briefs, for appellee, Phillips Steel & Metals Co.

Before BRIGHT, ROSS and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Appellant, Aaron Ferer & Sons Co., seeks reversal of the orders of the district court[1]

---

1. The Honorable Robert V. Denney, United States District Judge for the District of Nebraska.

dismissing, for lack of in personam jurisdiction, appellant's complaints against appellee corporations, American Compressed Steel Co. and Phillips Steel & Metals Company, Inc. We affirm.

These consolidated appeals are yet two more in a series recently submitted to this court and resulting from litigation undertaken by Aaron Ferer following its filing in 1974 of a petition for arrangement under Chapter XI of the Bankruptcy Act.[2] In 1976 appellant filed a number of separate complaints, including the two now the subject of this appeal, alleging it had made voidable preferential transfers,[3] and asserting jurisdiction in the district court under the Nebraska long-arm statute.[4] Both American Compressed Steel Co. (ACS) and Phillips Steel & Metals Company, Inc., appellees in the instant appeal, challenged the court's in personam jurisdiction, and filed respective motions to dismiss which were granted by the district court.

■ The sole issue presented is whether application of the Nebraska long-arm statute to the facts of the cases before us offends due process. The appropriate law was set forth in our previous opinion, *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.,* 558 F.2d 450 (8th Cir. 1977), in which we upheld the district court's dismiss-

als of four nonresident defendants on grounds that due process was not met in applying the Nebraska long-arm statute. The test or due process is to question whether nonresident defendants have sufficient minimum contacts with the forum state so as to comply with traditional notions of fair play and substantial justice, *see International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); whether defendants have invoked the benefits and protections of Nebraska law by their activities in that state, *see Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); and, because these cases involve contract disputes, whether the contracts have a substantial connection with the forum state, *see McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

With respect to the Nebraska long-arm statute, we noted the declaration made by the Supreme Court of Nebraska in *Stucky v. Stucky,* 186 Neb. 636, 185 N.W.2d 656, 659 (1971), that the language of the long-arm statute clearly indicates the legislative intention to apply the minimum contacts rule where it does not offend traditional concepts of fair play and substantial justice. *Aaron Ferer & Sons Co. v. Atlas, supra,* 558 F.2d at 453. We further recognized that

---

**2.** *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.; Becker Metals Corp.; Wimco Metals, Inc. and Sitkin Smelting & Refining Co.,* 558 F.2d 450 (8th Cir. 1977). Pending at this time are *Aaron Ferer & Sons Co. v. Diversified Metals Corp.* (No. 76–1959); *Levin Brothers, Inc.* (No. 76–1960); *Mueller Brass Co.* (No. 76–1961); *Univertical Corp.* (No. 76–1962); *Tellco Trading Co.* (No. 76–1963); *Goldsboro Iron & Metal Co.* (No. 76–1965) 564 F.2d 1211 (8th Cir., submitted May 19, 1977).

**3.** In these cases just as in those described in our previous opinion, *supra,* 558 F.2d at 452, appellant alleged that it purchased certain metal goods from each appellee for resale to third parties and that after each appellee had shipped the goods, it either wrongfully stopped or diverted the goods while in transit, wrongfully reclaimed them after the transit had been completed, or wrongfully collected the proceeds from a subsequent purchaser without remitting the proceeds to appellant. Appellant alleged these events occurred within four months before it filed its petition for arrangement and while it was insolvent, and thus con-

stituted transfers by appellant to or for the benefit of appellees, unsecured creditors of appellant, for or on account of antecedent debts. Appellant claimed these transfers operated as preferences under § 60 of the Bankruptcy Act, 11 U.S.C. § 96. It sought to have appellees' transfers of the goods declared null and void. It also sought return of the goods or, if the goods had been converted, judgment against appellees for the value of the goods at the time of transfer.

**4.** Neb.Rev.Stat. § 25–536 (1975 Reissue) provides in pertinent part:

Jurisdiction over a person. (1) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's: (a) Transacting any business in this state; (2) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

the reach of the Nebraska long-arm statute is limited only by the constitutional constraints imposed by the minimum contacts rule. *Id. See Vergara v. Aeroflot "Soviet Airlines,"* 390 F.Supp. 1266, 1270 (D.Neb. 1975).

■ In applying the minimum contacts rule, we consider the following factors operative in determining whether the requirements of due process are satisfied adequately to invoke personal jurisdiction under a long-arm statute: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Aaron Ferer & Sons Co. v. Atlas, supra,* 558 F.2d at 453; *Caesar's World, Inc. v. Spencer Foods, Inc.,* 498 F.2d 1176, 1180 (8th Cir. 1974).

The record before us indicates that Aaron Ferer, ACS and Phillips are all traders of various ferrous and nonferrous metals. Aaron Ferer is a Nebraska corporation with its principal place of business in Omaha. ACS is a New York corporation which has offices in Kansas City, Missouri, and Phillips is a Kansas corporation with its principal offices in Coffeyville, Kansas.

In a typical transaction between Ferer and either of the two appellee companies, a contract for the purchase and sale of metal would be negotiated by telephone. Aaron Ferer would then prepare a contract in its Omaha office and mail it to ACS in Kansas City or to Phillips in Coffeyville, Kansas, where the contract would be executed and returned to Aaron Ferer. Aaron Ferer would immediately seek to resell the metal goods to an unrelated third party, and if successful, would direct ACS or Phillips, as the case might be, to ship the metal goods to this designated purchaser. ACS or Phillips would invoice Aaron Ferer, and Aaron Ferer would remit the purchase price in the form of a check by mail.

Prior to filing its Chapter XI petition in bankruptcy, Aaron Ferer and ACS had engaged in a course of metal trading for a period of fifteen years for an aggregate amount of $500,000.00. Much of their dealing was of the variety just described which ACS refers to as "broker-type" contracts, characterizing its own function as that of a middleman, buying from the mill and reselling to Aaron Ferer so that Ferer would not have to pay for the metal in cash in advance, which was required to purchase directly from the mill. The two contracts between Aaron Ferer and ACS here in dispute arose from this "broker-type" arrangement. They were prepared in the "typical" manner by Aaron Ferer in Omaha, Nebraska on Ferer's own forms on March 29 and April 2, 1974, and provided for shipment to Ferer's designated purchasers. As in other contracts of this type, the shipments did not go to or through the State of Nebraska, but traveled directly to Ferer's subsequent purchasers, FOB Armco Steel Corp. in Kansas City, Missouri, and FOB Lone Star Steel Co., Bond, Texas, respectively.

The transactions between Aaron Ferer and ACS were apparently not limited to the "broker-type" contracts. On occasion, Aaron Ferer also sold metal clips to ACS. Metal clips must be baled preparatory to delivery to a steel mill, and because Aaron Ferer did not have the necessary equipment to bale metal clips, it sold the clips to ACS which in turn processed them for consumption by a steel mill. Though the potential sale of clips was discussed by the parties on a monthly basis, contracts were not necessarily made that often. When a sale was arranged, the metal clips would be shipped from wherever they happened to be located, usually outside the State of Nebraska, to ACS in Kansas City. Aaron Ferer, however, has called the court's attention to two instances in 1973 when shipments of metal clips bound for ACS originated in Omaha, Nebraska.

Trading between Aaron Ferer and Phillips had been conducted for two years prior to the disputed contracts, reaching an aggregate amount of $75,000.00. Characteristically, the purchase contracts at issue were negotiated by telephone, and on March 28 and April 5, 1974 sent on Aaron

Ferer forms to Phillips in Coffeyville, Kansas, for execution. The contracts reflected that each order was to be shipped to Aaron Ferer's subsequent purchaser at the purchaser's address, Armco Steel Corp. in Sand Springs, Oklahoma, and Griffin Wheel Co. in Kansas City, Kansas, respectively.

As were these disputed transactions, virtually all of the dealings between Aaron Ferer and Phillips were in the nature of the "typical" transaction described previously which included shipment to Aaron Ferer's designated purchaser who was ordinarily located in a state other than Nebraska. Appellant, however, has pointed out two occasions when shipments apparently were received by Aaron Ferer in Omaha, Nebraska. One contract, dated February 16, 1973, and marked FOB Coffeyville, Kansas, provided that Aaron Ferer was to advise shipping instructions. A later bill of lading indicates the destination as Omaha, Nebraska. The bill of lading for another contract dated April 10, 1972, and also FOB Coffeyville, Kansas, reflects shipment on a railroad car bound for Chicago, Illinois, which stopped in Omaha, Nebraska for partial unloading.

■ Evaluating the disputed contracts between Aaron Ferer and the appellees in light of the minimum contacts criteria set forth above, we find that neither ACS nor Phillips had sufficient contacts with the State of Nebraska to satisfy the due process requirements necessary to assert in personam jurisdiction over either of them under the Nebraska long-arm statute.

■ In terms of the quality and quantity of contracts between appellees and the forum state of Nebraska, neither ACS nor Phillips maintained an office or agent in the State or sent salesmen there to conduct business. None of the contracts at issue were executed in Nebraska nor performed in any part in that State. The goods contracted for did not originate in Nebraska nor were they destined for Nebraska, and the appellee companies did not invoke the benefits and protections of Nebraska law by reason of any activities in that State connected with those contracts.[5]

The transactions in suit did involve telephone calls and exchanges of correspondence, contracts, invoices and negotiable instruments between Aaron Ferer in Nebraska and ACS in Missouri and Phillips in Kansas. However, we noted with approval in our previous *Aaron Ferer* opinion the apt observation made by the district court that "the use of arteries of interstate mail, telephone, railway and banking facilities is insufficient, standing alone, to satisfy due process." *Aaron Ferer & Sons Co. v. Atlas Scrap Iron, supra,* 558 F.2d at 453.

Appellant Ferer argues that application of the Nebraska long-arm statute to obtain in personam jurisdiction over the appellees in these cases is justifiable on grounds that a long-term course of dealing had been developed between the appellant in Nebraska and the appellees in Missouri and Kansas with the respective relationships including some transactions in which the appellee had had significant contact with the forum State of Nebraska. The appellant contends that a well-established course of dealing coupled with some previous contact between the appellees and the forum state is sufficient to satisfy the jurisdictional requirements in the instant cases. We do not agree.

■ Out of the fifteen years of trading with ACS, Aaron Ferer has directed our attention to only two contracts under which metal moved from one party to the other through the State of Nebraska. The two contracts are not involved in this appeal, and, according to the record, are not even of the same "broker-type" variety as the

5. We have said that in analyzing minimum contacts, the interest of a state in providing a forum for its residents, and the convenience of the parties are only "secondary factors" to be considered and are not determinative. *Aaron Ferer & Sons Co. v. Atlas Scrap Iron, supra,* 558 F.2d at 455–56; *Thompson v. Ecological Science Corp.,* 421 F.2d 467 (8th Cir. 1970). Where, as here, the "primary factors" such as the nature, quality and quantity of the contacts as well as the relation of the cause of action to the contacts do not indicate sufficient minimum contacts, the "secondary factors" alone cannot control.

ones here in dispute. Similarly, Aaron Ferer has pointed to only two contracts with Phillips which involved shipments through Nebraska. As stated, both shipments were FOB Coffeyville, Kansas, where Phillips is located. We do not now decide whether these few scattered contracts involving past shipments through Nebraska may have provided contacts sufficient to justify Nebraska jurisdiction with respect to those transactions. We note only that those contracts are totally unrelated to the complaints in the cases here on appeal, and we find that they do not represent contacts between the appellees and the State of Nebraska sufficient to justify asserting jurisdiction under the long-arm statute or to fairly require appellees to defend themselves in a Nebraska forum.

■ To assess compliance with due process, with respect to jurisdiction in a particular case, the minimum contacts relied upon must be between the defendant and the forum state, not simply between the defendant and a resident of the forum state. Standing alone, previous dealings with a resident appellant, absent other contact with the forum state, cannot be used as the basis for establishing jurisdiction over a nonresident appellee. *Aaron Ferer & Sons Co. v. Atlas Scrap Iron, supra,* 558 F.2d at 455 n.6; *see Hanson v. Denckla, supra,* 357 U.S. at 250–55, 78 S.Ct. 1228.

While continuous and systematic commerce was carried on between Aaron Ferer and each of the appellees, there was never established a regular relationship between the appellees and the State of Nebraska. Since the contacts of ACS and Phillips relative to this litigation were exclusively with a resident of Nebraska rather than with the State, the requirements of due process were not met, and the appellees were not properly subject to jurisdiction under the Nebraska long-arm statute.

The orders of the district court dismissing Aaron Ferer's complaints against ACS and Phillips for lack of jurisdiction are affirmed.