**ANNE CARLSEN CENTER FOR CHILDREN, Plaintiff,**

v.

**GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS, Defendant.**

**No. A1–04–098.**

United States District Court, D. North Dakota, Southwestern Division.

Feb. 16, 2005.

Timothy D. Lervick, Schulz Lervick & Geierman, Bismarck, ND, for Plaintiff.

Cameron W. Hayden, U.S. Attorney's Office, Bismarck, ND, Gina Harrison, Virgin Islands Dept of Justice Assistant Attorney General, St Thomas, VI, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

HOVLAND, Chief Judge.

Before the Court is the Defendant's motion captioned "Defendant's Motion to Dismiss or, in the Alternative, Defendant's Motion for Summary Judgment" filed on October 12, 2004. The Plaintiff filed a response opposing the motion on January 3, 2005.[1] The Plaintiff also filed a request for oral argument. For the reasons outlined below, the Defendant's motion is denied.

## I. *BACKGROUND*

The plaintiff, Anne Carlsen Center for Children (hereinafter referred to as Anne Carlsen), is a licensed intermediate care facility for the developmentally disabled and a school located in Jamestown, North Dakota. It "provides medical services, residential services, rehabilitation services and educational services, among other things." *See* Complaint, ¶ 5.

Prior to July 1, 2003, the facility was owned and operated by Banner Health.

---

1. The Court notes that the response filed by the Plaintiff's attorney, Tim Lervick, includes legal discussion on personal jurisdiction (Docket No. 14, pp. 3–7) that was taken verbatim from this Court's Order Denying Motion to Dismiss, issued on November 8, 2004, in a case entitled *Zidon v. Pickrell,* Case No. A1–04–113. A citation to the actual source of the text contained in the responsive brief would have been appropriate.

On July 1, 2003, Banner Health donated the facility to Anne Carlsen, which has operated the facility since that time. *See* Complaint, ¶ 6. Banner Health was formerly known as Banner Health System, and together they operated the facility under the name Anne Carlsen Center for Children. *See* Complaint, ¶ 7.

Banner Health entered into three separate contracts with the defendant, the Government of the United States, Virgin Islands, to provide various medical, educational and related services to three Virgin Islands residents; Fitzroy Joseph, Terrence Leonard and Shakejah Smith. *See* Affidavit of Dan Howell, ¶ 6. In turn, the Virgin Islands agreed to pay for those services. *See* Complaint, ¶¶ 8–9. The contractual history as to each child is unique.

Shakejah Smith was admitted to Anne Carlsen on August 27, 1991. Annual contracts were signed by Banner Health and the Virgin Islands for consecutive annual periods from September 1992 through September 2002. In the fall of 2002, another contract was prepared for an additional year of service to end on September 30, 2003. *See* Affidavit of Dan Howell, ¶ 9. However, on May 13, 2004, the CEO of Anne Carlsen, Dan Howell, received a letter from the Virgin Islands informing him that the most recent contract for Shakejah could not be processed and enclosed a new contract. *See* Plaintiff's Ex. B. The Virgin Islands stated that it was unable to process the contract because it "must now justify the services as having been rendered." *Id.* As a result, the new contract "will become effective upon signature of the Governor of the Virgin Islands." Howell signed the new contract and returned it to the Virgin Islands on May 19, 2004. The Governor never signed the contract. Shakejah graduated from Anne Carlsen on May 22, 2004. No payments have been made for the services provided to Shakejah from October 1, 2002 through May 22, 2004. The amount owed for services over that time period is $244,900.50. *See* Affidavit of Dan Howell, ¶ 9.

Fitzroy Joseph was admitted to Anne Carlsen on July 10, 2002. *See* Affidavit of Dan Howell, ¶ 10. A contract for Fitzroy's care was prepared for a period ending on September 30, 2003. *See* Affidavit of Dan Howell, ¶ 11. On May 13, 2003, the same letter was received from the Virgin Islands explaining that it was unable to process the contract for Fitzroy and submitted a new contract. *See* Plaintiff's Ex. D. Howell signed the new contract and returned it to the Virgin Islands on May 19, 2004. The Governor never signed the contract. Fitzroy was discharged from Anne Carlsen on July 8, 2004. No payments have been made for the services provided to Fitzroy from July 10, 2002 through July 8, 2004. The amount owed for services over that time period is $171,171.11. *See* Affidavit of Dan Howell, ¶ 11.

Lastly, Terrance Leonard was admitted to Anne Carlsen on August 13, 2001. A contract for the provision of services to Terrance was prepared and signed for the time period of August 13, 2001 through September 30, 2002. *See* Affidavit of Dan Howell, ¶ 12. As with the others, a contract was prepared for an additional year of service to end on September 30, 2003. *See* Affidavit of Dan Howell, ¶ 13. Once again, on May 13, 2004, the letter was received from the Virgin Islands along with a new contract. *See* Plaintiff's Ex. F. Howell signed the new contract and returned it to the Virgin Islands on May 19, 2004. However, a third contract for Terrance's care for the contract period from October 1, 2002 through September 30, 2004, was sent to Howell from the Virgin Islands. Howell signed and returned it to the Virgin Islands on June 24, 2004. The third contract was later signed by Marc

Biggs, Commissioner of Property and Procurement, Noreen Michael, Commissioner of Education, and Charles W. Turnbull, Governor of the Virgin Islands. Terrance is still presently housed at Anne Carlsen. The Virgin Islands owed $305,643.25 for services provided to Terrance as of August 4, 2004. *See* Affidavit of Dan Howell, ¶ 13.

On August 4, 2004, Anne Carlsen filed an action in the United States District Court for the District of North Dakota, against the Government of the United States, Virgin Islands, seeking $721,714.86 for services rendered under the three contracts.[2]

## II. *LEGAL DISCUSSION*

The Defendant seeks dismissal for lack of personal jurisdiction and lack of subject matter jurisdiction. In the alternative the Defendant seeks summary judgment.

### A. *PERSONAL JURISDICTION*

 The initial inquiry is whether the Court has personal jurisdiction over the Defendant. The Motion to Dismiss was filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of jurisdiction over the party. "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) (citing *Falkirk Min. Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 373 (8th Cir.1990); *Watlow Elec. Mfg. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir. 1988)). "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir.2004).

The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. *Epps*, 327 F.3d 642, 647 (citations omitted).

 As a preliminary matter, it should be noted that this action is in federal court based on diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, a federal district court in a diversity action will have personal jurisdiction to the same extent as a state court of the state in which that federal district court sits. *Dean v. Olibas*, 129 F.3d 1001, 1003 (8th Cir.1997). Therefore, when this Court sits in diversity, the analysis for personal jurisdiction involves two steps: (1) the court must determine whether the State of North Dakota would accept jurisdiction under the facts of this case; and (2) the court must determine whether the exercise of jurisdiction comports with constitutional due process restrictions. *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704, 706–707 (8th Cir.2003) (citing *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993)). To satisfy the first step of the jurisdictional analysis, the Court will address the relevant North Dakota provisions governing personal jurisdiction over non-resident defendants.

The jurisdiction of North Dakota courts is governed by the North Dakota long-arm statute set forth in Rule 4(b)(2) of the North Dakota Rules of Civil Procedure. The North Dakota Supreme Court has held that Rule 4(b)(2) "authorizes North Dakota courts to exercise jurisdiction over nonresident defendants to the fullest extent permitted by due process...." *Hansen v. Scott*, 645 N.W.2d 223, 230 (N.D. 2002) (citing *Auction Effertz, Ltd. v.*

---

**2.** On December 7, 2004, Anne Carlsen received a check in the amount of $298,173.02 from the Virgin Islands in partial payment for care provided to Terrance Leonard. *See* Plaintiff's Ex. G.

*Schecher,* 611 N.W.2d 173 (N.D.2000); *Hust v. Northern Log, Inc.,* 297 N.W.2d 429, 431 (N.D.1980)). The Eighth Circuit has held that when a state construes its long-arm statute to grant jurisdiction to the fullest extent permitted by the Constitution, the two-step test collapses into a single question of whether the exercise of personal jurisdiction comports with due process. *Oriental Trading Co., Inc. v. Firetti,* 236 F.3d 938, 943 (8th Cir.2001); *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 818 (8th Cir.1994); *see Hansen v. Scott,* 645 N.W.2d 223, 232 (N.D.2002).

The Eighth Circuit has explained the requirements of the due process clause as follows:

Due process requires that there be sufficient "minimum contacts" between the nonresident defendant and the forum state such that the "maintenance of the suit does not offend the traditional notions of fair play and substantial justice." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Sufficient minimum contacts exist when the "defendant's conduct and connection with the forum state are such that he or she should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. 559. In assessing the defendant's reasonable anticipation, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.' " *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (emphasis in original).

*Stanton v. St. Jude Medical, Inc.,* 340 F.3d 690, 693 (8th Cir.2003).

■■ There are two categories of minimum contacts with a state that may subject a defendant to jurisdiction in that forum, i.e., general and specific. With respect to general jurisdiction over a defendant, "a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Dever,* 380 F.3d 1070, 1073 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). A state has specific jurisdiction over a defendant when the suit arises out of, or is related to, the defendant's contacts with the forum state.

Both categories of minimum contacts require some act by which the defendant purposely avails himself or herself of the privilege of conducting activities within the forum state, and thus invokes the benefits and protections of its laws. If a court determines that a defendant has minimum contacts with the forum state, the court must then consider " 'whether the assertion of personal jurisdiction would comport with fair play and substantial justice.' " *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■ The Eighth Circuit has established a five-part test for measuring minimum contacts for purposes of asserting personal jurisdiction over a defendant: (1) the nature and quality of [a defendant's] contacts with a forum state; (2) the quantity of

such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5)[the] convenience of the parties. *Dever*, 380 F.3d 1070, 1073–74 (citing *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)). In determining whether a defendant has sufficient contacts with the forum state to exercise personal jurisdiction, the court must consider all of the contacts in the aggregate and examine the totality of the circumstances. *Northrup King Co. v. Compania Productora Semillas Algodoneras, Selectas, S.A.*, 51 F.3d 1383, 1388 (8th Cir.1995). The Eighth Circuit affords "significant weight" to the first three factors. *Dever*, 380 F.3d 1070, 1074.

Anne Carlsen limits its argument to specific jurisdiction, and the Court will do the same. As previously noted, specific jurisdiction requires that the cause of action arise out of or be related to the defendants' contacts with the forum state. *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 648 (8th Cir.2003). The Court will analyze each of the Virgin Island's contacts in relation to the claims being asserted and the factors prescribed by the Eighth Circuit.

1. ***NATURE AND QUALITY OF CONTACTS***

 Under this factor, the primary issue is whether the non-resident defendants "have fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereignty." *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 576 (8th Cir.1992) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). The fair warning requirement will be satisfied if the defendant has "purposefully directed" his or her activities at the residents of the forum state. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The con-

tact(s) with the forum state must be more than "random, fortuitous, or attenuated." *Id.*

Anne Carlsen contends that "[b]y contracting to have plaintiff provide services to Fitzroy Joseph, Terrance Leonard and Shakejah Smith in the state of North Dakota, defendant is subject to personal jurisdiction of this court." Complaint, ¶ 13. Anne Carlsen relies solely on the United States Supreme Court decision *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), to support its argument, whereas the Virgin Islands relies upon *Burger King* in reaching the opposite conclusion. This Court will examine the Supreme Court's holding.

The federal district court in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463–64, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), held that a Michigan franchisee was subject to personal jurisdiction pursuant to Florida's long-arm statute, which extended jurisdiction to any individual, whether or not a citizen or resident of the Florida, who breaches a contract to be performed in the state by failing to perform acts required by the contract to be performed there. The Eleventh Circuit Court of Appeals reversed, and concluded that "jurisdiction under these circumstances would offend the fundamental fairness which is the touchstone of due process." *Id.* at 470, 105 S.Ct. 2174. On appeal, the Supreme Court held that the district court's assertion of jurisdiction over the out-of-state defendant did not offend due process. *Id.* at 478, 105 S.Ct. 2174.

The Supreme Court advised "[i]f the question is whether an individual's contract with an out-of-state partly *alone* can automatically establish sufficient minimum contracts in the other party's home forum, we believe the answer clearly is that it cannot." 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528; *see also Bell Paper*

Box, Inc. v. Trans Western Polymers, Inc., 53 F.3d 920, 922 (1995) (quoting Iowa Elec. Light & Power Co. v. Atlas Corp., 603 F.2d 1301, 1303 (8th Cir.1979)) ("Merely entering into a contract with a forum resident does not provide the requisite contacts between a nonresident defendant and the forum state."). The Supreme Court emphasized "the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'" Id. at 478–79, 105 S.Ct. 2174 (citing Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316, 63 S.Ct. 602, 87 L.Ed. 777 (1940)). To that end, the Court stated "[i]t is these factors prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum." Id. at 479, 105 S.Ct. 2174.

Applying the prescribed factors, the Supreme Court held that the out-of-state defendant "reached out beyond" his Michigan residence by negotiating with a Florida corporation for a long-term franchise. 471 U.S. 462, 479–80, 105 S.Ct. 2174, 85 L.Ed.2d 528. In approving the contract, the defendant "entered into a structured 20–year relationship that envisioned continuing contacts with Burger King in Florida." Id. at 480, 105 S.Ct. 2174. Based on his voluntary acceptance and the nature and terms of the contract, the Supreme Court stated that the " 'quality and nature' of the defendant's relationship to the company in Florida can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'" Id. (citing Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 299, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The Supreme Court's conclusion was bolstered by the fact the defendant was an "experienced and sophisticated" businessman who did not act under duress, fraud, or misrepresentation, as well as the existence of a Florida choice-of-law provision appearing in the contract which provided that all disputes would be governed by Florida law. Burger King Corp., 471 U.S. 462, 481–85, 105 S.Ct. 2174, 85 L.Ed.2d 528. In conclusion, the Supreme Court stated that based on the substantial and continuing relationship, the terms of the contract, and the course of dealings between the parties, the District Court's exercise of personal jurisdiction did not offend due process. Id. at 487, 105 S.Ct. 2174.

The Supreme Court advised that one factor to consider is the terms of the contract. In this case, the main purpose of the each contract was to place a child into the Anne Carlsen Center in North Dakota to receive various medical, educational and related services. See Defendant's Ex. No. 1. The Virgin Islands "purposefully directed" its activities toward North Dakota by seeking out Anne Carlsen for placement of its children for whom it had a responsibility to provide appropriate services in accordance with the child's individual education program (IEP). In fact, under the terms of the contract, the Virgin Islands was responsible for transporting each child to North Dakota and back. As the Supreme Court stated in Burger King Corp., "where individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been vol-

untarily assumed." 471 U.S. 462, 473–74, 105 S.Ct. 2174, 85 L.Ed.2d 528 (citing *Kulko v. California Superior Court,* 436 U.S. 84, 96, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978)).

■ The Virgin Islands makes much of the choice-of-law provision contained in the contracts, which reads as follows:

This Contract shall be governed by and construed in accordance with the laws of the United States Virgin Islands. In addition to the existing provisions of this section, jurisdiction shall remain in the United States Virgin Islands.

*See* Defendant's Ex. No. 1.

■ In *Burger King Corp.,* the Supreme Court recognized that choice-of-law analysis is distinct from minimum contacts analysis, but cautioned that choice-of-law provisions are not to be ignored for jurisdictional purposes. 471 U.S. 462, 481–82, 105 S.Ct. 2174, 85 L.Ed.2d 528. However, without more, a choice-of-law provision is insufficient to confer jurisdiction. *Id; see also Bell Paper Box, Inc. v. Trans Western Polymers, Inc.,* 53 F.3d 920, 923 (8th Cir.1995) ("Although relevant to the jurisdictional question, a contractual choice of law clause is insufficient to confer jurisdiction without other 'deliberate affiliation' with the forum."). The Court is mindful of the choice-of-law provision contained in the contract between Anne Carlsen and the Virgin Islands, but recognizes that the existence of such a clause does not preclude a finding of personal jurisdiction. *See Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation,* 297 F.3d 1343 (Fed.Cir.2002); *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.,* 176 F.3d 867 (5th Cir.1999) ("[A]lthough the Agreement contained a [choice-of-law provision which opts away from the forum state], the multitude of contacts between [the defendant] and [the forum state] substantially outweighs the law choice factor."). As the holding in *Burger King*

*Corp.* makes clear, other factors must be considered. 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528.

In particular, the parties' course of dealings should be evaluated. In the present case, Anne Carlsen and the Virgin Islands have had an on-going relationship with respect to these three children since at least August of 1991, at which time Shakejah Smith was admitted to the school. *See* Affidavit of Dan Howell, ¶ 8. Moreover, Anne Carlsen has provided care to at least ten special needs children from the Virgin Islands over the past twenty-two years. *See* Affidavit of Dan Howell, ¶ 5. The length of the relationship between the Virgin Islands and Anne Carlsen strongly suggests that its contacts with North Dakota are much more than "random, fortuitous, or attenuated."

■ It is also noteworthy that the Virgin Islands contracted, paid, and negotiated with Anne Carlsen via mail and telephone. The Eighth Circuit has termed interstate facilities, such as telephone and mail, "secondary or ancillary" factors which "cannot alone provide the minimum contacts required by due process." *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.,* 53 F.3d 920, 923 (8th Cir.1995) (citing *Scullin Steel Co. v. National Ry. Utilization Corp.,* 676 F.2d 309, 314 (8th Cir.1982); *Mountaire Feeds Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 655–56 (8th Cir.1982)). However, such contacts are to be considered in conjunction with other contacts that may support personal jurisdiction. *Northrup King Co. v. Compania Productora Semillas Algodoneras, S.A.,* 51 F.3d 1383, 1388 (8th Cir.1995) (citing *Grand Entertainment Group v. Star Media Sales,* 988 F.2d 476, 482 (3d Cir.1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."); *Hendrickson v. Reg O Co.,*

657 F.2d 9, 12 (3d Cir.1981) ("It is the totality of the defendant's connections with the forum state that must be considered."); *Bigelow–Sanford, Inc. v. Gunny Corp.,* 649 F.2d 1060, 1063 (5th Cir.1981) ("court looks at relevant contacts in the 'totality of circumstances' rather than whether 'each standing alone would have been sufficient to sustain jurisdiction.' ")). In fact, the Eighth Circuit has specifically endorsed the consideration of business contacts in the course of contract negotiations by mail, telephone and fax. *See Northrup King Co. v. Compania Productora Semillas Algodoneras, Selectas, S.A.,* 51 F.3d 1383, 1388 (8th Cir.1995) (finding personal jurisdiction, in part, based on the defendant's written and faxed communications in arranging a sales contract).

The Court finds that based on the numerous and substantial contacts between the Virgin Islands and Anne Carlsen in North Dakota over an extended period of time, this factor weighs in favor of the exercise of personal jurisdiction.

### 2. QUANTITY OF CONTACTS

It is well-established that specific jurisdiction can arise from a single contact with the forum state. *Fulton v. Chicago, Rock Island & P.R. Co.,* 481 F.2d 326, 334–36 (8th Cir.1973); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 n. 18, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)) ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."). However, when specific jurisdiction is being alleged the quantity of contacts is not determinative. *West Publishing Co. v. Stanley,* No. Civ. 03–5832 (JRT/FLN), 2004 WL 73590, *4 (D.Minn. Jan. 7, 2004); (citing *Marquette Nat'l Bank of Minneapolis v. Norris,* 270 N.W.2d 290, 295 (Minn.1978); *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78

S.Ct. 199, 2 L.Ed.2d 223 (1957); *Marshall v. Inn of Madeline Island,* 610 N.W.2d 670, 674 (Minn.App.2000)). Thus, the Court is not concerned with the number of contacts made for purposes of whether specific jurisdiction exists.

### 3. RELATION OF CONTACTS TO CAUSE OF ACTION

The Court recognizes that Anne Carlsen's contract claims are directly related to and arise out of the Virgin Island's contacts with North Dakota. This factors weighs in favor of the exercise of personal jurisdiction.

### 4. INTEREST OF THE FORUM STATE

It is well-established in the Eighth Circuit that the first three factors as outlined above are of "primary importance," and the last two factors are of "secondary importance." *Stanton v. St. Jude Medical, Inc.,* 340 F.3d 690, 694 (8th Cir.2003); *Northrup King Co. v. Compania Productora Semillas Algodoneras,* 51 F.3d 1383, 1388 (8th Cir.1995); *Aaron Ferer & Sons Co. v. American Compressed Steel Co.,* 564 F.2d 1206, 1210 n. 5 (8th Cir.1977). The interest of the forum state is the fourth factor to be considered for purposes of exercising personal jurisdiction.

It stands to reason that North Dakota has an interest in adjudicating these claims and providing a forum for its residents. Therefore, the fourth factor weighs in favor of the exercise of personal jurisdiction. *See Aylward v. Fleet Bank,* 122 F.3d 616, 618 (8th Cir.1997) (quickly dispensing with this part of the test by assuming the forum state has an interest in providing a forum for its residents).

### 5. CONVENIENCE OF THE PARTIES

The Virgin Islands contends "[t]he cost and travel distance to defend this action in

North Dakota would severely impair the Defendant's ability to call all necessary witnesses who would be essential to its defense due to the fact that they all reside in the Virgin Islands." *See* Defendant's Motion to Dismiss or, in the Alternative, Defendant's Motion for Summary Judgment, p. 8. The Eighth Circuit has recognized that a plaintiff is normally entitled to choose the forum in which to litigate a case. *Northrup King Co. v. Compania Productora Semillas Algodoneras,* 51 F.3d 1383, 1389 (8th Cir.1995). The Court understands that several of the potential fact witnesses are located in the Virgin Islands. However, all parties and witnesses to this dispute are inconvenienced regardless of the location of the trial. This factor does not favor either party.

Based on the Virgin Islands' contacts with North Dakota and the totality of the circumstances, the Court finds that exercising jurisdiction over the Government of the United States, Virgin Islands comports with due process. *See Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.,* 111 F.3d 1386, 1390 (8th Cir.1997). The exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

### B. *SUBJECT MATTER JURISDICTION*

■ Anne Carlsen has invoked diversity jurisdiction. However, the Virgin Islands advances the following argument against jurisdiction:

> *Almost all* the Plaintiff's claims are completely dependent upon the validity of the alleged contract. However, Plaintiff's alleged contract was void *ad initio* and/or null, void and ineffective. Therefore, there is no valid contract amount at issue to support diversity jurisdiction pursuant to 28 U.S.C. § 1332.

*See* Defendant's Motion to Dismiss or, in the Alternative, Defendant's Motion for Summary Judgment, p. 9 (emphasis added).

■ When an action is between citizens of a State and citizens or subjects of a foreign state, as is the case here, a district court has original subject matter jurisdiction "where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). "This amount-in-controversy requirement is satisfied 'when a fact finder could legally conclude, from the pleadings and the proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000.' " *Capitol Indem. Corp. v. 1405 Associates, Inc.,* 340 F.3d 547, 549 (8th Cir.2003) (citing *Kopp v. Kopp,* 280 F.3d 883, 884 (8th Cir.2002)).

The Virgin Islands is essentially arguing the merits of the case. It contends that if the contract is ultimately found to be void, Anne Carlsen will recover no damages and fail to meet the amount in controversy required under 28 U.S.C. § 1332. However, such an argument is misplaced. If that were the appropriate inquiry, the amount in controversy requirement would never be satisfied because a plaintiff always runs the risk of losing on the merits of the claim and receiving no damages.

Further, Anne Carlsen correctly keys on the Virgin Islands use of the phrase "[a]lmost all the Plaintiff's claims are completely dependent upon the validity of the alleged contract." In fact, only a breach of contract claim would hinge on the contracts' validity. Anne Carlsen still has additional claims based on implied contract, equitable estoppel, promissory estoppel, and quantum meruit. The Court is satisfied, based on the pleadings and the proof adduced to the Court, that a fact finder could legally conclude that the damages Anne Carlsen suffered are greater than the requisite $75,000. As a result, the

Court finds that is has subject matter jurisdiction under 28 U.S.C. § 1332.

## III. *CONCLUSION*

The Court finds the Government of the United States, Virgin Islands, is subject to personal jurisdiction based on the totality of circumstances. The Court also finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The Defendant's motion is **DENIED.** (Docket No. 5). Summary judgment is also unwarranted because when the evidence is viewed in a light most favorable to the non-moving party, it is clear that there are genuine issues of material fact to be addressed at trial.

Finally, the Court notes that there has not been a motion filed to transfer the case to another district pursuant to 28 U.S.C. § 1404(a). However, the Court is interested in the parties' position on 1) whether the case should be transferred to another district; 2) the appropriate venue; *and* 3) an analysis of the forum selection clause contained in the contracts *and* how that clause factors into the Section 1404(a) transfer analysis. The parties are directed to file briefs on these matters within the next twenty (20) days. The briefs should be limited to ten pages and are to be filed on or before Friday, March 11, 2005. The Court also directs Magistrate Judge Charles S. Miller, Jr. to schedule an early settlement conference in this case as soon as reasonably possible.

**IT IS SO ORDERED.**